[No. 67126-5. En Banc.]

Argued November 18, 1999. Decided May 18, 2000.

THE STATE OF WASHINGTON, *on the Relation of Evergreen Freedom Foundation*, ET AL., *Appellants*, v. WASHINGTON EDUCATION ASSOCIATION, ET AL., *Respondents*.

James Martin Johnson; Ellis, Li & McKinstry, P.L.L.C., by Steven T. O'Ban and Nathaniel Lee Taylor; and Evergreen Freedom Foundation by Jeanne A. Brown, for appellants.

Judith A. Lonnquist; Harriet Kay Strasberg; Horenstein & Duggan, P.S. by Joni Roberta Kerr; Catherine C. O'Toole; and Dionne & Rorick by Clifford Donald Foster, Jr., for respondents.

James D. Oswald, on behalf of Washington State Labor Council, amicus curiae.

Daniel Benjamin Ritter, on behalf of Foundation for Campaign Finance Compliance, amicus curiae.

Shawn T. Newman, on behalf of Initiative and Referendum Institute, amicus curiae.

SMITH, J. — Appellants Evergreen Freedom Foundation[1] and Teachers For A Responsible Union[2] seek direct review of orders of summary judgment and dismissal by the Thurston County Superior Court in favor of Respondent School Districts[3] and Washington Education Associations[4] in a lawsuit by Appellants claiming violation by Respondents of RCW 42.17.680(3) in withholding funds from wages or salaries for political contributions without obtaining annual written authorizations. The Superior Court concluded that the WEA, in its capacity as a labor organization, did not violate RCW 42.17.680(3) because the statute applies only to an "employer or other person or entity responsible for the disbursement of funds in payment of wages or salaries." Additionally, the court concluded that Respondent School Districts did not violate section 680(3) because WAC 390-17-100, the rule promulgated by the Public Disclosure Commission to implement the statute, is entitled

---

[1]Evergreen Freedom Foundation is a Washington nonprofit corporation. Clerk's Papers at 14.

[2]Teachers For A Responsible Union is an unincorporated association of public school employees. Clerk's Papers at 14.

[3]The 15 school districts named as Respondents in this case are referred to collectively as "Respondent School Districts." Clerk's Papers at 15-16 and 35.

[4]The Washington Education Association (WEA) (a labor organization incorporated in Washington and affiliated with the National Education Association) (NEA). Kristeen Hanselman (an employee of NEA), the 21 individually named Uniserv Councils (regional affiliates of WEA and NEA), and the Seattle Education Association (a local education association affiliated with WEA) are referred to collectively as "Respondent Education Association." Clerk's Papers at 14-16, 26-29 and 154.

to great weight and the School Districts have complied with it. We affirm.

## QUESTIONS PRESENTED

The questions presented in this case are:

(1) Whether the Washington Education Association, in its capacity as a labor organization, is an "other person or entity responsible for the disbursement of funds in payment of wages or salaries" under RCW 42.17.680(3), which requires annual written authorization from members for payroll deductions by employers from wages or salaries for political contributions.

(2) Whether WAC 390-17-100, promulgated by the Public Disclosure Commission (PDC) to implement RCW 42.17-.680(3), properly requires an employer to obtain annual written authorization from employees for payroll deductions for political contributions only when payment from the deductions is made to a political committee required to report under chapter 42.17 RCW or a candidate for state or local office.

## STATEMENT OF FACTS

The facts in this case are not disputed. RCW 42.17.680(3) was enacted as a consequence of passage of Initiative 134 as section 8 of the Fair Campaign Practices Act on November 3, 1992.[5]

In the 1991 legislative session, Engrossed Substitute Senate Bill 5864 was introduced to regulate political contributions, campaign expenditures and advertising.[6] The bill, the original version of which later became Initiative 134, passed the Senate on March 15, 1991.[7] The House referred the bill

---

[5]See RCW 42.17.680(3).

[6]S.B. Rep. ESSB 5864, at 1 (Mar. 15, 1991).

[7]Id.

back to the Senate where it remained without further action through expiration of the 1991 legislative session.[8]

In 1992, senators from one political party sponsored Initiative 134.[9] The required signatures were obtained on the petition to the Legislature for the initiative to be placed on the November 1992 ballot.[10] Initiative 134 was passed by popular vote on November 3, 1992 by a margin of 72 percent.

Before Initiative 134 was passed in 1992, the Washington Education Association (WEA) made political contributions through a registered political committee, Political Unity of Leaders in State Education (PULSE).[11] At that time, PULSE was funded by automatic payroll deductions from the salaries or wages of WEA members who were state employees.[12] There was no requirement for annual reauthorization of PULSE deductions. After passage of Initiative 134, the WEA determined it was then required to obtain annual written authorization from its members before making further automatic payroll deductions for PULSE.[13]

---

[8] 1 LEGISLATIVE DIGEST AND HISTORY OF THE SENATE AND HOUSE OF REPRESENTATIVES, 52d Leg. 356 (Final No. 6, Wash. 1991-92).

[9] EDWARD D. SEEBERGER, SINE DIE: A GUIDE TO THE WASHINGTON STATE LEGISLATIVE PROCESS 164-65 (1997); see also S.B. Rep. ESSB 5864, at 1 (Mar. 15, 1991).

[10] SENATE JOURNAL, 52d Leg., Reg. Sess. 17 (Wash. 1992); see WASHINGTON STATE CONSTITUTION, article II § 1(a).

[11] Clerk's Papers at 310.

[12] WEA represents approximately 65,000 educational employees who work in the State's K-12 and post
secondary schools. An annual deduction of $13 per member was paid to PULSE with a portion distributed to Uniserv PACs. Clerk's Papers at 154 and 310. This concept, also referred to as "reverse dues check-off," occurred after an initial authorization to deduct dues from members' salaries was received by the WEA, and all subsequent payroll deductions to fund PULSE were automatic and would be discontinued only at the employee's request. See Br. of Appellant at 14.

[13] The WEA also noted a decline in the number of contributors to PULSE from a high of 44,785 to a low of 9,756 as of September 1995. Clerk's Papers at 348. Contributions to PULSE after the passage of Initiative 134 fell by $455,364. Br. of Appellant at 15.

The WEA dissolved PULSE in 1994[14] and established two new entities: the Washington Education Association-Political Action Committee (WEA-PAC)[15] and the Political Education Fund, later renamed the Community Outreach Program (COP).[16] WEA PAC is funded by a separate payroll deduction for which the WEA obtains annual written authorizations from employee-members.[17] COP is funded by "a special assessment on members" and not from a mandatory general membership dues deduction.[18] Employees within the WEA bargaining units who choose not to become WEA members are assessed a separate "agency shop fee,"[19]

---

[14]The WEA's "Life After Initiative 134 Task Force" stated the PULSE structure was outmoded. In April 1994, based on the recommendations of the Task Force, the WEA Representative Assembly disbanded PULSE and the Uniserv PACs. The dissolution of PULSE reduced each WEA member's payroll deduction by $13, while the deduction for general dues increased by $12. Clerk's Papers at 151-57 and 310-11; see also Br. of Appellant at 17-19.

[15]WEA-PAC is a centralized "political committee" as defined by RCW 42.17.020(33) and replaces the Uniserv PACs. WEA-PAC continues many of the political activities formerly conducted by PULSE, such as contributing to candidate campaigns, school levies and ballot propositions. Clerk's Papers at 155-56 and 311.

[16]An April 1994 amendment to WEA bylaws, Article II, Section 2, initially referred to the entity as "Political Education." Since November 1996, COP has not been recognized by the Public Disclosure Committee as a "political committee" under RCW 42.17.020(33). Clerk's Papers at 156-60 and 563.

[17]Each WEA-PAC member is assessed a $12 annual payment ($1 per month). Clerk's Papers at 156-57. Appellants do not claim funding of WEA-PAC violates RCW 42.17.680(3). See Br. of Appellant at 8; Br. of Resp't School Districts at 2.

[18]Resp't Education Association's Resp. to Amicus Curiae Br. of Foundation For Campaign Finance Compliance at 2; see Br. of Resp't School Districts at 4; Clerk's Papers at 151-57. (Respondent Education Association acknowledges that the WEA receives general dues from its members and uses general treasury funds for contributions defined by RCW 42.17.020(14)). Br. of Resp't Education Association at 8.

[19]Under United States Supreme Court precedent, the First Amendment rights of agency shop fee payers are preserved if they are not compelled to contribute to political or ideological causes they oppose. Specifically in Abood v. Detroit Board of Education, 431 U.S. 209, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977), the Court did not hold that a labor organization cannot use its general treasury fund for participation in the political process, but stated that the United States Constitution requires only that expenditures be financed "by employees who do not object to advancing those ideas and who are not coerced into doing so against their will by the threat of loss of governmental employment." Abood, 431 U.S. at 235-36;

which does not include a COP assessment,[20] as provided in collective bargaining agreements with employee-members and under RCW 41.59.100.

In this case, the WEA has negotiated collective bargaining agreements on behalf of the recognized bargaining units of Respondent School Districts' certificated employees affiliated with it.[21] Under the collective bargaining agreements, Respondent School Districts, through payroll deductions, withhold WEA general membership dues and agency shop fees of non-WEA members in the amounts determined by the WEA.[22] The WEA facilitates the payroll deduction process[23] and supplies the Respondent School Districts with membership manuals, rosters, various enrollment information, dues distribution information and written authorization forms. The school districts' payroll officers transmit withheld funds to the WEA or its designees under terms of

_____

*see also Railway Employees' Dep't v. Hanson*, 351 U.S. 225, 76 S. Ct. 714, 100 L. Ed. 1112 (1956); *International Ass'n of Machinists v. Street*, 367 U.S. 740, 81 S. Ct. 1784, 6 L. Ed. 2d 1141 (1961); *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 111 S. Ct. 1950, 114 L. Ed. 2d 572 (1991).

[20]There is no dispute that "agency shop fees" collected by WEA for representing non-union members in its collective bargaining units are not used for political purposes. "Agency shop fee" payers, in addition to Community College, Technical College and four-year University members, are not assessed for WEA-PAC and NEA-PAC. "Agency shop fee" payers are not assessed for COP. Clerk's Papers at 148-49 and 151-57; Br. of Appellant at 18; and Resp't Education Association's Resp. to Amicus Curiae Br. of Foundation For Campaign Finance Compliance at 2.

[21]Br. of Resp't School Districts at 4; Clerk's Papers at 460-509.

[22]Before withholding general membership dues, payroll officers do not obtain annual written authorization from WEA member-employees prior to transmittal of funds to the WEA. Br. of Resp't School Districts at 4. The payroll officers separately deduct dues from WEA members for the following: NEA, WEA, COP, NEA-PAC, WEA-PAC, Uniserv and Local. Br. of Resp't School Districts at 4; Clerk's Papers at 151, 156-58, 183-218, 519 and 815.

[23]The WEA's local education associations obtain member signatures on forms and provide copies to the school districts' payroll officers. The school districts do not independently verify compliance with RCW 42.17.680(3). Clerk's Papers at 148-49 and 519; *see* Br. of Appellant at 18; and Br. of Resp't Education Association at 8. A total deduction amount is provided by WEA to the school districts which in turn forward a single check reflecting the total deductions from the WEA member-employees' salaries or wages. The funds collected by WEA are then disbursed to the various recipients. Clerk's Papers at 460-509 and 518-19.

the collective bargaining agreements.[24] The WEA, COP, Uniserv Councils, and local education associations which receive funds withheld by Respondent School Districts have never registered as "political committees" under chapter 42.17 RCW nor have they been candidates for state or local political offices.[25]

Since August 30, 1993, an administrative rule promulgated by the Public Disclosure Commission, WAC 390-17-100, has required employers to obtain annual written authorizations from employees for payroll deductions for political purposes only when a recipient is a registered political committee under chapter 42.17 RCW or a candidate for state or local office.[26] Respondent School Districts acknowledge they are "employers" under RCW 42.17.680(3) and Chapter 41.59 RCW, the Educational Employment Relations Act.[27]

On June 24, 1997, Appellants Evergreen Freedom Foundation and Teachers For A Responsible Union[28] filed in the Thurston County Superior Court a complaint against Respondents School Districts and Education Association for campaign finance, reporting and contribution violations of chapter 42.17 RCW.[29] Their amended complaint filed on December 17, 1997 claimed several violations, including violation of RCW 42.17.680(3) by the WEA and Respondent School Districts for withholding funds from wages or salaries to be used for political committees or for use as political contributions without obtaining annual written au-

---

[24]School district payroll officers transmit the withheld funds to Blue Cross of Washington and Alaska or the local affiliates of the WEA which then forward the funds to the NEA, WEA, Uniserv Councils and Local Education Associations. Br. of Resp't School Districts at 4-5; Clerk's Papers at 183-218 and 815.

[25]Br. of Resp't School Districts at 4-5; Clerk's Papers at 153-66.

[26]WAC 390-17-100; see also Clerk's Papers at 100-03.

[27]Br. of Resp't School Districts at 3; Clerk's Papers at 15-16 and 36.

[28]Appellants Evergreen Freedom Foundation and Teachers For A Responsible Union are referred to collectively as "Appellants Evergreen Freedom Foundation."

[29]Clerk's Papers at 12-25.

thorizations.[30] Respondent Education Association filed its answer to the original complaint on August 12, 1997.[31] The answer of Respondent School Districts[32] to that complaint was filed on November 13, 1997.[33] Both Respondents denied each of the claimed violations of chapter 42.17 RCW.

On January 9, 1998, the Thurston County Superior Court, the Honorable Wm. Thomas McPhee, granted the motion of the Public Disclosure Commission (PDC) to intervene for the limited purpose of opposing Appellants' motion to add additional causes of action to its amended complaint.[34] The court denied Appellants' motion.[35]

On April 3, 1998, Respondent Education Association, Appellants Evergreen Freedom Foundation, Respondent School Districts and Vancouver School District filed separate motions.[36] Respondent Education Association moved to dismiss the claims in Counts III and IV of Appellants' amended complaint because the Association is not a "polit-

---

[30]Appellants claimed the following violations of chapter 42.17 RCW: (Count I) Violation of RCW 42.17.040, .050, .080 and .090—WEA failed to register and report as a political committee; (Count II) Violation of RCW 42.17.040, .050, .080 and .090—Uniserv Councils failed to register and report as political committees; (Count III) Violation of RCW 42.17.680(3)—WEA directs school districts to withhold or divert funds in payment of wages or salaries for political committees or for use as political contributions without obtaining annual written authorizations; (Count IV) Violation of RCW 42.17.680(3)—School districts are "employers" and withhold or divert funds in payment of wages or salaries for political committees or for use as political contributions without obtaining annual written authorizations; (Count V) Violation of RCW 42.17.150, .155, .170 and .180 by the NEA and Kristeen Hanselman for filing incomplete reports under-reporting NEA and NEA-PAC contributions; (Count VI) Violation of RCW 42.17.100 and .180 by WEA for not reporting expenditures supporting local elections; and (Count VII) Violation of RCW 42.17.180 by Seattle Education Association for not reporting contributions in 1996. Clerk's Papers at 42-54.

[31]Clerk's papers at 26-34.

[32]Respondent School District's answer was filed on behalf of all 15 school districts, including Vancouver School District 037. Clerk's Papers at 35.

[33]Clerk's Papers at 35-41.

[34]Clerk's Papers at 86-88.

[35]Clerk's Papers at 89-90.

[36]Clerk's Papers at 91, 228-55, 271, 723-53.

ical committee.''[37] In their motion for partial summary judgment, Appellants claimed the WEA and Respondent School Districts have violated RCW 42.17.680(3) and that the WEA is a "political committee" under RCW 42.17-.020(33).[38]

The trial court granted Respondent Education Association's motion to dismiss and denied Appellants' motion for partial summary judgment on July 2, 1998.[39] The court concluded the WEA is not an "employer or other person or entity responsible for the disbursement of funds in payment of wages or salaries," and is therefore not governed by RCW 42.17.680(3).[40] Relying on the "last antecedent rule" of statutory construction and the use of the phrase "employer or labor organizations" in subsections (1) and (2) of the statute, and its omission in subsection (3), the court concluded the drafters of the law intended to regulate labor organizations in some respects but did not intend for subsection (3) to apply to them.[41]

In the motions for summary judgment by Respondent School Districts and the Vancouver School District, they asserted there was no violation of RCW 42.17.680(3) and that they have complied with the PDC's rule (WAC 390-17--100).[42] The court granted summary judgment in favor of Respondent School Districts and the Vancouver School District.[43] The court stated that although RCW 42.17.680(3)

[37]Clerk's Papers at 91 and 684-711A.

[38]Clerk's Papers at 228-55.

[39]Clerk's Papers at 648-51.

[40]Clerk's Papers at 648.

[41]The trial court also concluded there are "clear issues of fact" concerning the Appellants' contention that "Section 680(3) applies to WEA as the principal of the school districts, who act as its agents in withholding dues . . . deductions from the districts' teachers." The court concluded the school districts have not violated section 680(3), and therefore no liability can be imputed to Respondent Education Association. Clerk's Papers at 649-51.

[42]Clerk's Papers at 271-93 and 712-53.

[43]Clerk's Papers at 643-47.

contains both "patent"[44] and "latent"[45] ambiguities, the rule promulgated by the PDC as the enforcing agency is entitled to "great weight when construing Section .680(3); but the court still must make an independent determination about the [school] districts' compliance with the statute."[46] The court reasoned that, although the school districts are "employers," the funds they deduct without prior annual authorization are not withheld as "political contributions" as that term is used in RCW 42.17.680(3) and, accordingly, Respondent School Districts did not violate the statute by withholding funds for the WEA. The court concluded "the [school] districts have complied with Section .680(3) as well as [WAC 390-17-100] . . . [and WAC 390-17-100 which] constru[es] the statute is consistent with the purposes of the Act."[47]

On July 28, 1998, Appellants moved for final judgment on the RCW 42.17.680(3) claims.[48] The court granted final judgment on August 24, 1998 dismissing counts III and IV of Appellants' amended complaint; dismissing Respondent School Districts as defendants; and dismissing the claims against Respondent Education Association for violation of RCW 42.17.680(3).[49]

On September 21, 1998, Appellants sought direct review

---

[44]The court stated the "patent" ambiguities of RCW 42.17.680(3) involve the phrase "for use as a political contribution" being juxtaposed with the phrase "contributions to political committees." Clerk's Papers at 645.

[45]The court stated the "latent" ambiguities of RCW 42.17.680(3) involve the "political committees to whom payments are regulated [but] are not identified[,] nor is the responsibility for identifying them assigned." Clerk's Papers at 645.

[46]Clerk's Papers at 647.

[47]The court issued a third order on July 2, 1998 on the issue of whether the WEA is a "political committee" as defined by RCW 42.17.020(33). The court denied the motions of both Appellants and Respondent Education Association and stated that additional discovery is required before assessing the impact of the "primary purpose test" under *State v. Dan J. Evans Campaign Committee*, 86 Wn.2d 503, 546 P.2d 75 (1976), on the WEA. Clerk's Papers at 647 and 652-56.

[48]Clerk's Papers at 657-59.

[49]Clerk's Papers at 663-67.

by this Court.[50] On October 23, 1998, in response to Appellants' request for discovery, the Superior Court issued a revised order dismissing all claims concerning COP because they were resolved in the settlement agreement of a separate lawsuit, *WEA v. PDC*, No. 96-2-04395-5 (Thurston County Super. Ct. Oct. 23, 1998).[51] This Court granted direct appeal in this case on August 31, 1999.[52]

## DISCUSSION

LAWS OF 1993, ch. 2, § 8, based upon Initiative 134 passed by the voters on November 3, 1992, now codified in identical language as RCW 42.17.680, reads:

> 42.17.680 **Limitations on employers or labor organizations.**[53] (1) No employer or labor organization may increase the salary of an officer or employee, or give an emolument to an officer, employee, or other person or entity, with the intention that the increase in salary, or the emolument, or a part of it, be contributed or spent to support or oppose a candidate, state official against whom recall charges have been filed, political party, or political committee.
>
> (2) No employer or labor organization may discriminate

---

[50]Clerk's Papers at 668-70.

[51]The settlement agreement in *WEA v. PDC* contained conclusions involving the active roles WEA, its affiliates and NEA played in the effort to defeat Initiatives 173 (establishment of vouchers to attend public or private schools) and 177 (creation of independent/charter schools and renewed school districts). Clerk's Papers at 69-88 and 348-67. The agreement included the following conclusions: COP dues will not be used for payment of administrative expenses of WEA-PAC or for contributions to any other political committee, candidate or political party and any funds so expended will be returned to WEA members; at least since November 1966 COP has not been a "political committee" as defined by RCW 42.17.020(33); WEA-PAC violated the reporting requirements of RCW 42.17.080 and .090; WEA violated RCW 42.17.170 and .180 regarding its contributions to WEA-PAC and to the "No on 173/177 Committee"; WEA and NEA violated RCW 42.17.120 by submitting $410 to the "No on 173/177 Committee" without disclosing NEA as the source of those funds; NEA violated RCW 42.17.180 by failing to file employer lobbyist reports; WEA-PAC exceeded the contribution limits of RCW 42.17.640; and penalized WEA and its affiliates in the amount of $80,000 in addition to costs and attorneys' fees in the amount of $20,000 both payable to the State. Clerk's Papers at 153-66.

[52]Order dated Aug. 31, 1999.

[53]LAWS OF 1993, ch. 2, § 8.

against an officer or employee in the terms or conditions of employment for (a) the failure to contribute to, (b) the failure in any way to support or oppose, or (c) in any way supporting or opposing a candidate, ballot proposition, political party, or political committee.

(3) *No employer or other person or entity responsible for the disbursement of funds in payment of wages or salaries may withhold or divert a portion of an employee's wages or salaries for contributions to political committees or for use as political contributions except upon the written request of the employee.* The request must be made on a form prescribed by the commission informing the employee of the prohibition against employer and labor organization discrimination described in subsection (2) of this section. The request is valid for no more than twelve months from the date it is made by the employee.

(4) Each person or entity who withholds contributions under subsection (3) of this section shall maintain open for public inspection for a period of no less than three years, during normal business hours, documents and books of accounts that shall include a copy of each employee's request, the amounts and dates funds were actually withheld, and the amounts and dates funds were transferred to a political committee. Copies of such information shall be delivered to the commission upon request.

(Emphasis added.)

Appellants Evergreen Freedom Foundation make two main contentions. First, they contend that Respondent Education Association, specifically the WEA, is an "employer or other person or entity responsible for the disbursement of funds in payment of wages or salaries" and is therefore required to comply with RCW 42.17.680(3). Second, they claim the WEA and Respondent School Districts, with which it has collective bargaining agreements, have violated the statute because the school districts deducted WEA general membership dues from the salaries or wages of its employee-members without prior annual written authorization, and transmitted those dues to the WEA, which in turn utilized them for political contributions.

The trial court found no violation of Section 680(3) by either Respondent Education Association or Respondent School Districts.[54]

### APPLICATION OF RCW 42.17.680(3) TO LABOR ORGANIZATIONS

 In this case, certain claims of Appellants against Respondent Education Association were dismissed under Court Rule (CR) 12(b)(6) and summary judgment was granted in favor of Respondent School Districts. Dismissal of a claim under CR 12(b)(6) is reviewed de novo and is appropriate only if " 'it appears beyond a reasonable doubt that no facts exist that would justify recovery.' "[55] This Court reviews an order of summary judgment de novo and engages in the same inquiry as the trial court.[56] In doing this, the Court will affirm a summary judgment order "only if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[57]

Appellants claim the WEA, in its capacity as a labor organization, is an "other person or entity responsible for the disbursement of funds in payment of wages or salaries" under RCW 42.17.680(3). They claim the terms "person"[58] and "entity"[59] are broadly defined and should be interpreted

---

[54]Briefs amicus curiae were filed in support of the WEA by the Washington State Labor Council and in support of Appellants by the Foundation For Campaign Finance Compliance and the Initiative And Referendum Institute.

[55]*Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998) (quoting *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994)).

[56]*Reid*, 136 Wn.2d at 201.

[57]*Id.*

[58]"Person" as defined by RCW 42.17.020(30) "includes an individual, partnership, joint venture, public or private corporation, association, federal, state, or local governmental entity or agency however constituted, candidate, committee, political committee, political party, executive committee thereof, or any other organization or group of persons, however organized."

[59]"Entity" is not defined by chapter 42.17 RCW. BLACK'S LAW DICTIONARY 532 (6th ed. 1990) defines it as "[a] real being; existence. An organization or being that possesses separate existence."

to include labor organizations.[60] The WEA concedes it is a "person or entity" but argues it is not "responsible for the disbursement of funds in payment of wages or salaries" to its members.[61] Appellants respond that the statute should be broadly construed to effectuate its purposes, which they claim were to limit the taking of salaries or wages for political purposes opposed by an employee-member and to prevent the consolidation of political power in large organizations such as labor organizations.[62] The WEA counters that the statute is not ambiguous, and thus an inquiry into legislative intent is not necessary.

But this case does require interpretation of RCW 42.17.680(3) as a matter of law.[63] It has not previously been interpreted by this Court.[64] The basic rules of statutory construction applicable to legislative enactments also apply to initiatives.[65] The objective of statutory interpretation is to execute the intent of the Legislature, which must be primarily determined from the language of the statute itself.[66]

---

[60]Appellants also claim the WEA is "responsible for the disbursement of funds" by relying upon the collectively bargained contract right of the WEA to inform the school districts of the amount of the general membership dues to withhold and "may withhold or divert a portion of an employee's wages or salaries." Clerk's Papers at 238-41.

[61]According to Respondent Education Association it "may direct school district payroll officers as to the amount of union dues to be deducted from the salary of an employee, . . . [h]owever, this fact does not make the union an 'entity responsible for [the] disbursement of funds in payment of wages or salaries.' " Respondent reiterates that school districts are "employers" and operate unilaterally in the area of disbursement of wages. Br. of Resp't Education Association at 14-15.

[62]Br. of Appellant at 31-40.

[63]*State v. Martin*, 137 Wn.2d 774, 788, 975 P.2d 1020 (1999).

[64]However, this Court interpreted another section of the statute, RCW 42.17.680(2) in *Nelson v. McClatchy Newspapers, Inc.*, 131 Wn.2d 523, 531, 936 P.2d 1123 (1997). (Fair Campaign Practices Act prohibits employers from discriminating against employees because of employees' refusal to abstain from political involvement.).

[65]*State ex rel. Heavey v. Murphy*, 138 Wn.2d 800, 808, 982 P.2d 611 (1999); *Seeber v. Public Disclosure Comm'n*, 96 Wn.2d 135, 139, 634 P.2d 303 (1981).

[66]*Roberts v. Johnson*, 137 Wn.2d 84, 91, 969 P.2d 446 (1999). *In re Custody of Smith*, 137 Wn.2d 1, 8, 969 P.2d 21 (1998).

When words in a statute are plain and unambiguous, this Court is required to assume the Legislature meant what it said and apply the statute as written.[67]

Section 8 of Initiative 134 was adopted by popular vote and later codified in identical language as RCW 42.17-.680(3). Subsection (3) prohibits those responsible for disbursement of funds in payment of employee wages from withholding or diverting a portion of those funds for political contributions. The prohibition of subsection (3) is directed to an "employer or other person or entity responsible for the disbursement of funds in payment of wages or salaries." The language of subsection (3) does include the words "labor organization," but does not characterize the organization as an "employer or other person or entity" paying the wages or salaries of employees.

A review of the entire statute indicates several specific references to "labor organizations." In particular, the phrase "employer or labor organizations" appears in both subsections (1) and (2), but the same words "employer or labor organizations" do not appear in subsection (3), although subsection (3) does refer to "employer or labor organizations discrimination."[68]

In this State general membership dues of a labor organization may be used as a source for political contributions.[69] The Federal Election Campaign Act of 1974,[70] 2 U.S.C. § 441b, to the contrary, prohibits use of corporate funds and labor organization funds for direct political contributions to federal election campaigns. The federal statute is clear and unequivocal in its language. Appellants' argument that subsection (3) of the Washington statute, RCW 42.17.680, was intended to achieve a similar result is not supported by citation to any authority.

---

[67]*In re Custody of Smith,* 137 Wn.2d at 8.

[68]*Accord Seeber,* 96 Wn.2d at 139 ("It is an elementary rule that where certain language is used in one instance, and different language in another, there is a difference in legislative intent.").

[69]Chapter 42.17 RCW.

[70]2 U.S.C. §§ 431-55.

■ Appellants have not identified any ambiguity in RCW 42.17.680 as it relates to labor organizations. Where there is no ambiguity, the meaning of a statute is derived from its language alone.[71] Where a statute is not ambiguous, it is not necessary to resort to legislative history to interpret it.[72]

■ ■ General rules of statutory construction require avoidance of unlikely, absurd, or strained results.[73] This Court does not ignore clear statutory language and will not strain to find an ambiguity where the language of the statute is clear.[74] The plain words in RCW 42.17.680(3), an "employer or other person or entity responsible for the disbursement of funds in payment of wages or salaries," does not include labor organizations. Nor are they included in the identical wording of Initiative 134, section 8(3).

INTERPRETATION OF RCW 42.17.680(3) UNDER WAC 390-17-100

The Public Disclosure Commission promulgated WAC 390-17-100 on authorizations for withholding political contributions under RCW 42.17.680(3). It reads:

**WAC 390-17-100 Contribution withholding authorizations.** (1) For purposes of RCW 42.17.680(3), all political contribution withholding authorizations existing on or before January 1, 1993, will expire no later than December 31, 1993. Beginning January 1, 1994, each employer or other person who withholds or otherwise diverts a portion of wages or salary of a Washington resident or a nonresident whose primary place of work is in the state of Washington

(a) For the purpose of making one or more contributions *to any political committee* required to report pursuant to RCW 42.17.040, [42.17].050, [42.17].060 or [42.17].090(1)(k), or

---

[71]*Geschwind v. Flanagan*, 121 Wn.2d 833, 840, 854 P.2d 1061 (1993).

[72]*Geschwind*, 121 Wn.2d at 841.

[73]*Double D Hop Ranch v. Sanchez*, 133 Wn.2d 793, 799, 947 P.2d 727, 952 P.2d 590 (1997) (citing *State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987)).

[74]*Geschwind*, 121 Wn.2d at 841.

(b) For use, specifically designated by the contributing employee, *for political contributions to candidates for state or local office* is required to have on file the written authorization of the individual subject to the payroll withholding or diversion of wages.

(Emphasis added.)

Appellants contend that Respondent School Districts violated RCW 42.17.680(3) by withholding dues and COP assessment deductions from the salaries or wages of WEA member-employees without their prior annual written authorization for contributions to "political committees" or for use as "political contributions" to candidates for state or local office. Respondent School Districts counter that transmitting the withheld funds to the WEA is not a "political contribution" under subsection (3). Appellants respond that, since the WEA makes political contributions from the withheld funds, the payments to it are necessarily also "political contributions." This is not necessarily so.

Respondent School Districts agree with the trial court's conclusion that RCW 42.17.680(3) contains both "patent"[75] and "latent"[76] ambiguities which are resolved by the administrative rule promulgated by the PDC.[77] The School Districts' main argument is that their transmitting WEA general membership dues and COP assessments complies with the statute because they have fully complied with

---

[75]The "patent" ambiguity relates to the phrase "for use as political contributions." School Districts assert that although "contributions" are defined in RCW 42.17.020(14), chapter 42.17 RCW, neither defines the term "political" nor the phrase "political contribution" to guide employers on when a withheld payment is "for use as a political contribution" under section 680(3). Br. of Resp't School Districts at 7.

[76]Similarly, the Districts identify a "latent" ambiguity: "No language guides employers on whether they must determine for themselves whether a payee of a withheld salar[y] or wag[e] is a political committee under RCW 42.17.020(33) or whether the duty to obtain annual requests applies only when the payee is registered as a political committee with the PDC." Br. of Resp't School Districts at 7.

[77]Respondent School Districts indicate that although a "political committee" is defined under RCW 42.17.020(33) and such organizations must register with the PDC and file reports under RCW 42.17.040-.090 and .105, section 680(3) is ambiguous. Br. of Resp't School Districts at 7.

WAC 390-17-100. The Districts maintain that WAC 390-17--100 resolves the ambiguities of subsection (3) by requiring employers to obtain annual authorizations for withholding salaries or wages only if (1) the payee is registered as a "political committee" with the PDC at the time the payment is made or (2) the payment is made as a designated contribution to a person who is a candidate for state or local political office. The Districts argue the contrary interpretation suggested by Appellants would require an employer to follow the money deducted from the employee-member's paycheck, determine its intended use and then require authorization, regardless whether the recipient of the deduction uses the funds as intended. They assert they have no control over expenditure by the WEA of withheld funds they forward to it or its affiliates.

 The powers of an administrative agency are derived from statutory authority expressly granted or necessarily implied.[78] The PDC has an express grant of authority to adopt rules to implement the policies and statutes contained in chapter 42.17 RCW.[79] Although an agency does not have the power to promulgate rules which amend or change legislative enactments, the agency may adopt rules which "fill in the gaps" if those rules are necessary for effectuation of a general statutory scheme.[80] Implementation and enforcement of RCW 42.17.680(3) required that the PDC promulgate rules for guidance to employers concerning the circumstances under which an employer must require written annual authorization prior to withholding or diverting a portion of an employee's wages or salaries for political purposes.

 "[A]dministrative rules adopted pursuant to a legislative grant of authority are presumed to be valid and

---

[78]*State v. Ford*, 110 Wn.2d 827, 831, 755 P.2d 806 (1988) (citing *Green River Community College v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 622 P.2d 826 (1980), *modified*, 95 Wn.2d 962, 633 P.2d 1324 (1981)).

[79]RCW 42.17.370.

[80]*Green River Community College*, 95 Wn.2d at 112 (citing *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975)).

should be upheld on judicial review if they are reasonably consistent with the statute being implemented."[81] "[A] party attacking the validity of an administrative rule has the burden of showing compelling reasons that the rule is in conflict with the intent and purpose of the legislation."[82] Appellants have not satisfied this burden.

WAC 390-17-100 requires an annual authorization only for funds withheld or diverted from an employee's wages for contributions to a political committee or for political contributions to candidates for state or local offices specifically designated by the contributing employee. When an employer has notice that the funds deducted are for the use of a political committee or candidate, the employer may not then make that deduction without specific annual authorization. However, when the employer makes deductions under the Education Employment Relations Act, RCW 41.59.100, and the Public Employees Collective Bargaining Act, RCW 41.56.110, and the employer is not made aware of the specific intended use of the funds, the employer has no legal obligation or authority to seek annual written authorization.[83]

In analyzing an administrative rule adopted by an agency charged with enforcing a statute, this Court has stated that:

The validity of an administrative rule may also be tested by the construction placed on the authorizing statute by the administrative agency. Moreover, an administrative construction nearly contemporaneous with the passage of the statute,

---

[81]*Green River Community College*, 95 Wn.2d at 112.

[82]*Id.*

[83]In this case, chapters 41.56 and 41.59 RCW are the collective bargaining laws governing school district employees. These statutes require the employer under a collective bargaining agreement to deduct dues from salaries of employees and to transmit those dues to the other party to the agreement, the labor organization. The interpretation by the PDC of RCW 42.17.680(3) does not conflict with the collective bargaining statutes because that interpretation does not restrict the employer in making dues deductions intended for the general treasury of labor organizations.

especially when the legislature fails to repudiate the contemporaneous construction, is entitled to great weight.[84]

(Citations omitted.) Initiative 134 was passed by popular vote on November 3, 1992 and codified in exact language as RCW 42.17.680 (3). WAC 390-17-100 was promulagated by the PDC to implement the statute and became effective on August 30, 1993.

In November 1996, the Executive Director of the PDC concluded that RCW 42.17.680(3) did not apply to the WEA nor labor organizations generally.[85] The Legislature has neither repudiated that interpretation by the PDC nor amended the statute. In 1997 and 1998, the Legislature considered proposed legislation which would have amended RCW 42.17.680(3) by restricting expenditures by entities receiving funds through payroll deductions. No such legislation was passed.[86] The Legislature has apparently acquiesced in the PDC's interpretation of RCW 42.17.680(3) since 1996.

Appellants claim the intent of the drafters of Initiative 134, section 8, was to protect the "constitutional rights" of labor organization members. They advocate a liberal interpretation of RCW 42.17.680(3).[87] Respondents Education Association and School Districts both assert Appellants' constitutional argument is without merit because neither the text of the initiative nor the Voters Pamphlet refer to the constitution.

 The intent of the electorate in initiatives must be ascertained from the language of the initiative itself, as well as from statements contained in the official Voters

---

[84]*Green River Community College*, 95 Wn.2d at 117-18; *see In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 903 P.2d 443 (1995).

[85]Clerk's Papers at 705-09.

[86]Clerk's Papers at 710-11A.

[87]Br. of Appellant at 31. Also, Appellants provide no authority for their claim that precedent established by United States Supreme Court and United States Court of Appeals for the Ninth Circuit interpreting the constitutionality of labor organizations' security provisions is the foundation for Initiative 134 and enactment of RCW 42.17.680(3). Br. of Appellant at 40-50.

Pamphlet.[88] Initiatives are not construed like other legislation because, in interpreting them, reviewing courts "focus on the language of the initiative ' "as the average informed lay voter would read it." ' "[89] Although chapter 42.17 RCW is to be construed liberally, this Court need not do so if such a construction would result in an unlikely, absurd, or strained interpretation of the statutory language.[90]

Appellants base their arguments on what they perceive to be the intent of subsection (3), while ignoring the language of Initiative 134 and the language of the Voters Pamphlet. In determining the purpose or intent of the statute based upon the initiative, the Court may consider arguments made for and against the initiative in the Voters Pamphlet.[91] The Voters Pamphlet makes no reference to court decisions or agency practice.[92]

The intent of the people of this State in enacting Initiative 134 can be determined from the declarations in RCW 42.17-.610 and .620.[93] Appellants contend that RCW 42.17.610(1) and RCW 42.17.620(2) support their position on the purpose

---

[88]*State v. Thorne*, 129 Wn.2d 736, 763, 921 P.2d 514 (1996).

[89]*Senate Republican Campaign Comm. v. PDC*, 133 Wn.2d 229, 243, 943 P.2d 1358 (1997); *see City of Spokane v. Taxpayers of City of Spokane*, 111 Wn.2d 91, 98, 758 P.2d 480 (1988) (quoting *Estate of Turner v. Department of Revenue*, 106 Wn.2d 649, 654, 724 P.2d 1013 (1986)).

[90]*Senate Republican Campaign Comm. v. PDC*, 133 Wn.2d at 243.

[91]*State v. Thorne*, 129 Wn.2d at 763.

[92]Only a single sentence in the Voters Pamphlet relating to agency fees refers to sections 26 and 16 (codified as RCW 42.17.760). There is no reference to section 8(3). In the section entitled "The Effect of Initiative Measure 134, if approved as law" it states "[v]oluntary state payroll deductions for political committees would no longer be permitted and agency shop fees could not be used for political purposes without individual authorization." Clerk's Papers at 743-44.

[93]**"42.17.610 Findings.** The people of the state of Washington find and declare that:

"(1) The financial strength of certain individuals or organizations should not permit them to exercise a disproportionate or controlling influence on the election of candidates.

"(2) Rapidly increasing political campaign costs have led many candidates to raise larger percentages of money from special interests with a specific financial stake in matters before state government. This has caused the public perception that decisions of elected officials are being improperly influenced by monetary contributions.

of RCW 42.17.680(3). They claim subsection (3) was adopted to stop unions from "amassing large funds . . . for politics without authorization."[94] However, RCW 42.17.610(1) and RCW 42.17.620(2) relate only to campaign contributions to political candidates, as codified in RCW 42.17.640. The remaining findings in RCW 42.17.610 similarly limit their application to "candidates" and "elected officials."

RCW 42.17.620(2) may be construed as applying only to contribution limits for political campaigns. It does not identify "large organizational contributors." No distinction is made between labor organizations and corporations with respect to limits on campaign contributions unless specifically noted as in RCW 42.17.760.

RCW 42.17.640 relates to contribution limits for all persons. Its language does not distinguish between labor organizations and corporations and treats all donors equally. Under RCW 42.17.640, the intent to reduce the "influence of large organizational contributors" is achieved by imposition of a maximum contribution limit on all donors. Contrary to Appellants' assertions, the stated intent to "reduce the influence of large organizational contributors" does not mean that labor organizations are prohibited from using their general treasury funds for contributions and expenditures defined under RCW 42.17-.020(14), (19).

The full context of Initiative 134 suggests the reference to limiting the influence of labor organizations and all "large organizational contributors" is associated with the

---

"(3) Candidates are raising less money in small contributions from individuals and more money from special interests. This has created the public perception that individuals have an insignificant role to play in the political process.

"**42.17.620 Intent.** By limiting campaign contributions, the people intend to:

"(1) Ensure that individuals and interest groups have fair and equal opportunity to influence elective and governmental processes;

"(2) Reduce the influence of large organizational contributors; and

"(3) Restore public trust in governmental institutions and the electoral process."

[94]Br. of Appellant at 33.

provisions limiting contributions to candidates. This language does not justify creation of unstated prohibitions on a wide variety of campaign activity by labor organizations.

Prior to passage of Initiative 134, there were no restrictions on the type of funds a labor organization could use for contributions defined by RCW 42.17.020(14). RCW 42.17.760 restricts the expenditures a labor organization may make in only one way: by preventing labor organizations from using agency shop fees paid by nonmembers to operate a political committee or influence an election. In prohibiting only the use of agency shop fees paid by nonmembers, RCW 42.17.760 inferentially allows labor organizations to use dues paid by members for contributions to political committees and candidates. The drafters of Initiative 134 prohibited use of agency shop fees collected from nonmembers. This leads to the logical conclusion that the Initiative did not alter the ability of labor organizations to use members' dues for contributions under chapter 42.17 RCW. Contrary to Appellants' assertions, RCW 42.17.680(3) does not prohibit the use of a labor organization's general treasury funds for political contributions.

The trial court was correct in its adoption of the PDC's interpretation in WAC 390-17-100 which clarifies both RCW 42.17.680(3) and RCW 42.17.760. RCW 42.17.680(3) permits a labor organization to use for political purposes general treasury funds obtained from dues of members, while RCW 42.17.760 prohibits the labor organization from using for political purposes agency shop fees paid by nonmembers.

It is a basic rule of statutory construction that, whenever possible, statutes should be construed so that no part of the statutory scheme is rendered superfluous.[95] To accomplish this purpose, all provisions should be harmo-

---

[95]*State ex rel. Heavey*, 138 Wn.2d at 807 n.2 (citing *Sim v. State Parks & Recreation Comm'n*, 90 Wn.2d 378, 383, 583 P.2d 1193 (1978)).

nized.[96] This we have done. There is no statutory prohibition against a labor organization using general treasury funds obtained from members' dues for the purpose of operating a political committee, influencing an election or to otherwise make contributions to a political committee or candidate.

## SUMMARY AND CONCLUSION

In determining whether the WEA as a labor organization is an "other person or entity responsible for the disbursement of funds in payment of wages or salaries" under RCW 42.17.680(3), the Court looks first to the statute. Under the clear and unambiguous language of the statute, it is evident that labor organizations are not subject to its provisions. Labor organizations are not required to obtain annual written authorization for use of funds for political contributions prior to receiving general membership dues by payroll deduction from its members.

The interpretation of RCW 42.17.680(3) by the Public Disclosure Commission in WAC 390-17-100 clarifies any ambiguity and helps to implement the statute without amending it or frustrating its intent.

We affirm the decision of the Thurston County Superior Court which dismissed the claims by Evergreen Freedom Foundation and Teachers For A Responsible Union for violations of RCW 42.17.680(3) against Respondent School Districts and granted summary judgment in favor of Respondent Education Association.

GUY, C.J., and JOHNSON, TALMADGE, and IRELAND, JJ., concur.

ALEXANDER, J. (concurring in the result) — I agree with the majority opinion as far as it goes. I find it unsatisfactory only in that it fails to define the "notice" that triggers a school district employer's responsibility to follow the

---

[96]*State v. Thomas*, 121 Wn.2d 504, 511, 851 P.2d 673 (1993); *see City of Puyallup v. Pacific N.W. Bell Tel. Co.*, 98 Wn.2d 443, 448, 656 P.2d 1035 (1982).

dictates of RCW 42.17.680(3). I quickly add that I disagree with the view Justice Sanders expresses in his concurrence/ dissent to the effect that a district should be deemed to have notice if it learns or should learn, from public records or sources outside the Washington Education Association (WEA), about the destination of withheld funds. A more difficult question, though, is presented if a district receives information from one of its employees, who claims he or she is a member of the WEA and privy to the internal workings of the association, that withheld money is being used for the benefit of political candidates or committees. Under that scenario, a much stronger argument can be mounted that the district has actual notice, or that, at the very least, it must assume a burden to make further inquiries. One could argue that if we were to conclude otherwise, we would be rendering the statute, which was passed by the people, a nullity and would be placing too great a premium on the district's right to turn a blind eye to information it receives from an employee who claims he or she is affected by the deduction.

Despite the concerns I express above, I nevertheless concur in the result here because there was no showing that the district received actual notice from any WEA member prior to the withholding of funds.

TALMADGE, J. (concurring) — While I agree with the thorough and well-reasoned opinion of the majority in this case, I write separately to emphasize my growing dismay with the cavalier attitude taken by many lawyers and parties toward the mandate of RAP 10.3(e). RAP 10.3(e) requires a brief of an amicus curiae to conform to all of the provisions of our rules regarding the contents of a brief; additionally, the brief must "set forth a separate section regarding the identity and interest of amicus and be limited to the issues of concern to amicus." In the present case, we received a brief from an organization styling itself the Foundation for Campaign Finance Compliance. The brief of this high-sounding organization fails to comply with RAP 10.3(e)

because it contains no information identifying the organization or its interests in the present litigation. This violation of RAP 10.3(e) should have resulted in rejection of the brief. RAP 10.7.

On the larger question in this case, I approach the issues here with the certain sense of irony. An organization calling itself the Evergreen Freedom Foundation purports to utilize Washington's public disclosure laws regarding the activities of the Washington Education Association and its affiliates. There is little mystery regarding the nature of the Washington Education Association or its affiliates: they are educational employee unions. On the other hand, we know nothing about the Evergreen Freedom Foundation. It chooses to utilize the courts for what may be a political agenda, and yet we know nothing regarding the individuals or organizations who make up the Evergreen Freedom Foundation or provide financial support to it. Just as we know nothing regarding the organization or funding of the "Foundation for Campaign Finance Compliance," we know nothing of the organization or funding of the Evergreen Freedom Foundation. Perhaps a healthy dose of "public disclosure" so vigorously sought by these organizations would be usefully applied to their own activities as well, so the public will know who supports and funds them when they purport to be acting in the public interest.

I have previously expressed an extreme reluctance to see Washington's judiciary dragged into the mire of political questions. *See* Philip A. Talmadge, *Understanding the Limits of Power: Judicial Restraint in General Jurisdiction Court Systems*, 22 SEATTLE U. L. REV. 695 (1999). In many respects, being dragged into political battles such as may be present here ultimately diminishes the authority and dignity of the courts. But on a more practical level, presuming that we are in the midst of a political battle that must, in fact, be decided, it is anomalous that we should be asked to decide a question regarding public disclosure fraught with political implications by organizations who neither comply with our rules regarding the disclosure of their

identity and interest as amicus curiae, or who have never provided the public with any clues regarding their organization or funding sources. Even my capacity for irony, tested over many years in the partisan political system, cannot withstand such an overwhelming onslaught as in this case.

MADSEN, J. (concurring/dissenting) — I agree with the majority that RCW 42.17.680(3) does not apply to labor organizations. I also agree that the Public Disclosure Commission's interpretation of the statute in WAC 390-17-100 should be given deference. I cannot agree, however, that either the statute or the rule contains the "notice standard" advanced by the majority. Having correctly identified the scope of the statute and the employer's obligation by reference to the rule, the majority then inexplicably imports a notice standard which is unnecessary in light of and inconsistent with the agency rule, places the employer in an untenable position with regard to this and other statutory obligations, and is not necessary to meet the purposes of Initiative 134.

RCW 42.17.680(3) provides in relevant part that "[n]o employer . . . may withhold or divert a portion of an employee's wages or salaries for contributions to political committees or for use as political contributions except upon the written request of the employee. . . ." This provision is part of the Fair Campaign Practices Act of 1992, enacted by the voters as Initiative 134. The trial court ruled this language was ambiguous, both because the statute does not provide guidance as to whether an employer must determine whether an entity is a political committee or whether only registered political committees fall within its scope, and because it is not clear what is meant by "for use as political contributions." RCW 42.17.680(3).

I do not agree that the term "political committees" is ambiguous. Where a statute defines key terms and uses plain language, it is not ambiguous. *United States Tobacco Sales & Mktg. Co. v. Department of Revenue*, 96 Wn.

App. 932, 938, 982 P.2d 652 (1999). The Fair Campaign Practices Act (Act) provides that the definitions in RCW 42.17.020 apply to RCW 42.17.680 except as modified by the Act. LAWS OF 1993, ch. 2, § 3 (definitions apply to sections 4 through 19 of the Act); *see* section 8 (codified as RCW 42.17.680). "Political committee" is defined in RCW 42.17.020(33) as "any person (except a candidate or an individual dealing with his or her own funds or property) having the expectation of receiving contributions or making expenditures in support of, or opposition to, any candidate or any ballot proposition." RCW 42.17.040(1) requires "[e]*very political committee*" having the expectation of receiving contributions or expending funds in any election campaign to register. (Emphasis added.) *See also* RCW 42.17.065 (requiring continuing political committees to register in accordance with RCW 42.17.040). Since the definition in RCW 42.17.020(33) applies to RCW 42.17.680, since every political committee expecting contributions must register, and since RCW 42.17.680(3) concerns contributions, the term "political committees" in the context of RCW 42.17.680(3) is plainly coextensive with registered political committees.[97]

Accordingly, if an employer withholds a portion of an employee's wages or salary for contributions to a registered political committee, the annual employee written consent required by RCW 42.17.680 must be obtained.

It is a closer question whether there is ambiguity in the phrase "for use as political contributions." The provision as a whole is aimed at obtaining annual consent where an employer withholds a portion of wages or salaries for disbursement as political contributions, and not where disbursement is to a labor organization in the form of union dues or other union assessments which are not readily

---

[97]It is possible a political committee may fail to register as required. That possibility does not, however, alter the analysis. It is not up to employers to assure that political committees comply with the registration requirements. What employers must do themselves is comply with RCW 42.17.680(3) which, in accord with RCW 42.17.020(33) and RCW 42.17.040, concerns contributions to political committees, i.e., *registered* political committees.

identifiable as political contributions. Assuming the phrase is ambiguous, however, the majority is correct in resolving the ambiguity by reference to the agency interpretation of the statute.

Two rules of statutory construction are particularly applicable here. First, an agency's interpretation of an ambiguous statute is entitled to great weight where the statute is one which the agency is charged with implementing and concerns matters within the agency's expertise. *City of Seattle v. Department of Labor & Indus.*, 136 Wn.2d 693, 704, 965 P.2d 619 (1998); *Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council*, 129 Wn.2d 787, 799, 920 P.2d 581 (1996); *City of Pasco v. Public Employment Relations Comm'n*, 119 Wn.2d 504, 509, 833 P.2d 381 (1992). Second, the contemporaneous construction placed upon a statute by the agency charged with enforcement is accorded great weight. *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 780, 903 P.2d 443 (1995); *Green River Community College v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 118, 622 P.2d 826 (1980); *Morin v. Johnson*, 49 Wn.2d 275, 279, 300 P.2d 569 (1956). An administrative construction which is nearly contemporaneous with passage of legislation is particularly entitled to great weight where the Legislature fails to repudiate the contemporaneous construction. *Green River*, 95 Wn.2d at 118. Finally, an additional principle for construing statutes is important here. Where an agency charged with administering a statute promulgates a particular definition of a statutory term (in the absence of a statutory definition), that definition should be accorded weight. *See Phillips v. City of Seattle*, 111 Wn.2d 903, 908, 766 P.2d 1099 (1989).

Here, WAC 390-17-100 is a contemporaneous interpretation of RCW 42.17.680(3), it defines the phrase "for use as political contributions," and it has not been repudiated by the Legislature.[98] The rule provides that employers must obtain annual consent where the employer withholds or

---

[98]Although the people enacted the statute through the initiative process, the Legislature has had time in which to lawfully amend the statue, as it has done

diverts wages or salaries "[f]or use, specifically designated by the contributing employee, for political contributions to candidates for state or local office . . . ." WAC 390-17--100(1)(b).

As construed by the Public Disclosure Commission, the rule gives meaning to both phrases in the statute. "Contributions to political committees" means contributions to registered political committees, which, pursuant to RCW 42.17.020, may involve contributions to committees supporting or opposing candidates *or* to committees supporting or opposing ballot measures. "For use as political contributions" pertains to contributions to candidates for office. (While an employee could not designate a direct contribution supporting a ballot measure, because no entity exists to utilize the contribution, an employee can designate contributions to political committees and candidates.)

The majority agrees that WAC 390-17-100 properly clarifies RCW 42.17.680(3). Majority at 639. However, the majority adopts a notice standard found neither in the statute nor in the rule. The majority says that where the employer has notice that the deducted funds are for the use of a political committee or candidate, the employer must have the employee's written annual consent. Majority at 635.

This standard is completely unnecessary where the rule is a correct interpretation of the statute. The employer will be able to determine whether the funds withheld from wages or salaries will be disbursed to a registered political committee, and will know from a specific designation by the employee whether the funds are to go to a candidate for office. There is no uncertainty about whether the annual authorization is required; the employer has clear guidelines for compliance with the statute.

The majority's judicially created condition causes needless confusion. Does "notice" mean actual notice, and if so, from whom? Does it mean constructive notice, i.e., a reasonable employer should have known? Relevant to the cir-

---

with other provisions enacted by passage of Initiative 134. *See, e.g.*, Laws of 1995, ch. 397, § 20, amending RCW 42.17.640.

cumstances in this case, does the employer ever have an affirmative duty to inquire of a labor organization what the funds it receives are to be used for, i.e., if there is some question about what funds are to be used for, with use as a political contribution a possibility, must the employer inquire further?

The majority's notice standard is also confusing because it means that although the agency rule correctly states the law, it does not *always* correctly state the law. WAC 390-17--100 dictates that amounts deducted as dues to a labor organization do not require an annual authorization since they are not contributions to registered political committees nor are they amounts specifically designated by the employee as contributions to candidates for office. However, under the majority's notice rule, if the employer has notice that some of the dues will ultimately be put to these uses, then an annual authorization is required. Thus, the notice standard is inconsistent with the agency's interpretation of RCW 42.17.680(3) in WAC 390-17-100.

The majority's notice standard also raises disturbing questions about how an employer is to comply with RCW 42.17.680(3) and other statutory mandates. The employer is put in an untenable position. The employer will be under considerable pressure to assure its own compliance with RCW 42.17 because RCW 42.17.390 provides that an employer who violates RCW 42.17.680(3) may be subject to a civil penalty of up to $10,000 for each violation. At the same time, however, several other statutes impose restraints on employers. For example, RCW 41.59.100, part of the Educational Employment Relations Act, provides that as a result of collective bargaining, an employer may be required to deduct from the employee's pay monthly dues to a labor organization. There is no requirement of an annual authorization, however. Under RCW 41.59-.140(1)(b), it is an unfair labor practice for an employer to interfere with the administration of any employee organization.

Thus, if an employer school district has some reason to

believe that a portion of union dues or other assessments withheld will be used as political contributions, and requires an annual consent form from the employee in an effort to comply with the majority's notice rule, the employer could well run afoul of RCW 41.59.100 if mistaken. However, if the same employer inquires into a labor organization's use of funds in an effort to verify whether dues are used for political contributions, the employer may well run afoul of RCW 41.59.140(1)(b). Looming all the time is the potential for penalties under RCW 42.17.390. This uncertainty does not arise under the agency's interpretation of the statute to which the majority purports to give deference.

A public employer is also restrained by RCW 41.56.110. That statute provides that as a result of a collective bargaining agreement involving public employees, an employer may be required to deduct from the employee's pay monthly dues to a labor organization upon written authorization of the employee. The statute does not require an annual authorization. Therefore, a public employer who has reason to believe that some portion of an employee's union dues will be used for political purposes and attempts to obtain annual consent for withholding that portion under RCW 42.17.680(3) runs the risk of violating RCW 41.56.110 if wrong.

This conflict between the statutory obligations does not arise under WAC 390-17-100. Moreover, any conflict between the statutes arising from the majority's added notice standard would have to be resolved in favor of the collective bargaining provision. With the exception of port district employees, RCW 41.56.905 mandates that the provisions of RCW 41.56 prevail in the case of conflict with any other statute. Where an annual consent form involving union dues sought pursuant to RCW 42.17.680(3) conflicts with RCW 41.56.110, RCW 41.56.110 must prevail. Of course, under the Public Disclosure Commission's interpretation of RCW 42.17.680(3), there is no risk of violating RCW 41.56.110 and no potential conflict between the statutes.

The majority concedes that the Commission's interpretation avoids conflict with the collective bargaining laws found in RCW 41.56 and RCW 41.59, and says that the Commission's interpretation "does not restrict the employer in making dues deductions intended for the general treasury of labor organizations." Majority at 635 n.83. The majority negates the Commission's interpretation, though, because it states: "[W]hen the employer makes deductions under . . . RCW 41.59.100, and . . . RCW 41.56.110, *and the employer is not made aware of the specific intended use of the funds*, the employer has no legal obligation or authority to seek annual written authorization." Majority at 635 (emphasis added). In other words, under the notice standard an employer is at risk of violating the collective bargaining laws. Moreover, the majority's explanation of how RCW 42.17.680(3) is to operate in conjunction with the collective bargaining laws highlights the inconsistency of the majority's notice standard and WAC 390-17-100.

The majority's importation of a notice standard is also at odds with this court's decision in *Washington Federation of State Employees v. State*, 127 Wn.2d 544, 901 P.2d 1028 (1995). There, the court held unconstitutional as applied a provision of Initiative 134 which repealed a statute authorizing state employees to have voluntary payroll deductions contributed to registered political committees. The provision unconstitutionally impaired contracts when applied to collective bargaining agreements in existence when the initiative was adopted. Where a collective bargaining agreement compels an employer to withhold dues for labor organizations from members' wages without an annual authorization, requiring annual consent under RCW 42.17.680(3) for some part of that withheld amount because it may ultimately be used for political purposes raises similar concerns to those addressed in *Washington Federation*.

The majority's notice standard is not necessary to meet the purposes of the Fair Campaign Practices Act, either. The Act clearly is designed to prevent use of agency fees paid by nonunion members as political contributions, not

to prevent use of members' dues to labor organizations for political purposes. That goal is achieved by RCW 42.17.760.

The stated purposes of the Act do not suggest the majority's notice standard is required. RCW 42.17.610 and RCW 42.17.620 list goals of the Act as preventing special interest groups from having improper influence over decisions of elected officials, providing that individuals and interest groups have fair and equal opportunity to influence elections and government processes, reducing the influence of large organizational contributors, and restoring the public trust in governmental institutions and the electoral process. The majority's notice standard is not necessary in order to satisfy any of these purposes. Further, nothing in the Act or its history indicates that the Public Disclosure Commission's interpretation of RCW 42.17-.680(3) is inconsistent with the purposes of the Act. As explained, a notice standard is unnecessary under the agency's rule.

Because the majority's notice standard is unnecessary, inconsistent with the agency rule which the majority agrees correctly states the law, will cause confusion, and will place employers in untenable positions when trying to comply with applicable laws, I dissent from that part of the majority adopting the notice standard. This court should defer to the agency interpretation of RCW 42.17.680(3), an interpretation which resolves all of the problems which the majority's notice standard raises.

For the reasons stated, I dissent in part.

AGID, J. PRO TEM., concurs with MADSEN, J.

SANDERS, J. (concurring in part, dissenting in part) — At issue is the meaning and application of a single sentence in the Fair Campaign Practices Act:

> No employer or other person or entity responsible for the disbursement of funds in payment of wages or salaries may withhold or divert a portion of an employee's wages or salaries for contributions to political committees or for use as political contributions except upon the written request of the employee.

RCW 42.17.680(3).

The problem is certain school districts withheld union dues from teachers' salaries, turned those dues over to the Washington Education Association (WEA), which, in turn, made contributions to political candidates and committees of its choice absent prior written approval of the employee. The WEA claims this provision of the act is inapplicable to it because it is not "responsible for the disbursement of funds in payment of wages." RCW 42.17.680(3). The majority agrees with the claim that the WEA is outside the act, and so do I. Therefore I agree the trial court's dismissal of the WEA should be affirmed. All concede, however, school district *employers* fall within the scope of the act.

Dismissal of the WEA does not relieve school district employers of their responsibility to comply with this law. Rather the districts contend they have complied, asserting their responsibility is limited by the statute to assure the immediate direct payee of the deduction (here, the WEA) is not itself a candidate or political committee. It is out of their department what that payee actually does with the money, they argue. The trial court agreed with this "snapshot" approach, dismissing the districts from this suit on that basis.

Although I commend the districts' argument for its simplicity, and recognize any requirement that an employer be held responsible to "follow the money" Watergate-style[99] may impose an unwanted burden on the employer, this is after all a policy argument for the electorate, not this court. Our job, absent constitutional objection, is to read the statute and apply its plain language, letting the chips fall where they may. And if the language is ambiguous, it is our duty to resolve the ambiguity in accordance with our previously established rules of statutory construction, and then apply the law impartially.

---

[99]One recalls Deep Throat's advice to Woodward and Bernstein to "follow the money." ALL THE PRESIDENT'S MEN (Warner Bros. 1976).

Plain language of initiative

We begin (and I would prefer to end) our analysis with the plain language of the enactment: "In interpreting [an initiative] we must look to the voters' intent and the language of the [i]nitiative as the average informed lay voter would read it." *In re Estate of Hitchman*, 100 Wn.2d 464, 467, 670 P.2d 655 (1983).

Subsection 680(3) of this statute plainly prohibits withholding, absent consent, of any portion of wages or salary "for contributions" or "for use as political contributions." The employers' argument is the strongest when it comes to the "for contributions" language as that could be construed to connote a directness or immediacy associated with the payee, i.e., the deduction is not made "for contributions" but for union dues.

However the "for use as" language would pertain to how the money is used once it goes wherever it is going. As the statute does not define "use" in this context, we look to the plain and ordinary meaning of the word as found in a dictionary. *State v. Bolar*, 129 Wn.2d 361, 366, 917 P.2d 125 (1996). As even small school children know, to "use" something is to put it to "a particular service or end." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2523 (1981). The dictionary tells us further "use" involves "a sense of a useful or valuable end, result, or purpose." *Id*. Therefore to determine how the withheld money is "used" in this context we must be mindful of its end, result, or purpose, which means we must follow it to its destination.

Further support for this proposition is found in our recent decision in *State v. Batten*, 140 Wn.2d 362, 997 P.2d 350 (2000). There we considered what it means to have "used" a motor vehicle in the commission of a felony, and decided the plain and ordinary meaning of "used" gleaned from WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2524 (3d ed. 1966) is " 'employed in accomplishing something.' " *State v. Batten*, 140 Wn.2d at 365 (quoting *State v. Batten*, 95 Wn. App. 127, 129, 974 P.2d 879 (1999)). Defining

"used" in this way we held the defendant *used* his car in the commission of a felony (possession of narcotics and a firearm) when he employed his vehicle not to drive, but to store and conceal his felonious accoutrements. Employing this definition, that "use" means employed to accomplish something, we can safely say that to determine how withheld dues are "used" we must look to the "something" in furtherance of which they are "employed," i.e., political contributions. Moreover, since criminal statutes are strictly and narrowly construed, the same term when used in this civil statute must mean at least as much as it means in the criminal context.

Although there is some claim in this record that the WEA did not actually *use* the *particular* money obtained from mandatory dues, but rather preexisting reserves, for political purposes, there is also evidence in this record which would support the opposite view. However under the summary judgment rule, CR 56, all facts must be construed most favorably to the nonmoving party. Such approach should therefore control our disposition here in favor of the appellants.

Notably the trial court did not base its dismissal on a contrary view of the facts. Rather the trial court endorsed the districts' "snapshot" analysis which absolves the employer of *any* responsibility for what his payee does with the money as a matter of law. But based on the plain language of this statute, I disagree.

What is truly inexplicable about the majority opinion is that it *also* disagrees with this "out-of-my-department" approach. Indeed the majority cautions that an employer is absolved from liability only if "the employer is not made aware of the specific intended use of the funds . . . ." Majority at 635. The majority thus rejects the core of the employers' argument that how these funds are ultimately used is irrelevant, and thus equally rejects the basis of the trial court's summary dismissal. But it affirms that dismissal nonetheless!

I submit the majority cannot sustain its affirmance, even under its own theory, unless it finds neither fact nor inference in this record that the employer knew or reasonably should have known that at least a portion of these mandatory deductions would end up in political campaign coffers.[100] But I think it is fairly obvious they would, for the following reasons.

First, these employers do not even deny knowledge about the ultimate political destination of these funds. Rather they have litigated this case on the theory that they have no responsibility beyond the immediate payee. Br. of Resp't School Districts at 10-11. That is the same position taken by the WEA. Br. of Resp't Educational Ass'n at 24-25.

Second, the WEA makes no bones about its continued and historical involvement in political campaigns. The WEA tells us such involvement is necessary and appropriate to facilitate the interest of its members. No apologies made.

Third, public records demonstrate that the WEA in fact donates to political candidates and campaigns. For example, a simple glance at the Public Disclosure Commission's list of "Major Contributors to Ballot Issues" (dated Jan. 13, 1997), which is a public record available to any school district, discloses substantial general budget amounts devoted to political purposes. Said document alone shows a total of $713,841 was contributed in 1996 by the WEA to defeat Initiatives 173 and 177 allowing for school vouchers and charter schools. Clerk's Papers (CP) at 168.

---

[100]Justice Alexander's concurrence faults the majority for failure to define "notice" and would put a school district on notice of the political destination of funds only if the source of the information regarding the political use comes from its own employee rather than any other source, including official Public Disclosure Commission filings. I, on the other hand, find no problem with respect to the definition of "notice" (nor do I puzzle at the lack thereof) since any notice requirement is an invention of the majority, as the term is conspicuous in its absence from either the statute or regulation. Moreover if we are to judicially impose a knowledge predicate without statutory basis I can conceive of no reason that knowledge can be obtained only from an employee rather than some other (potentially more reliable) source. There is no rational basis to believe official public records filed by the WEA with, say, the Public Disclosure Commission, indicating the political destination of its funds, is less reliable than the scuttlebutt of a district employee "who claims he or she is a member of the WEA and privy to the internal workings of the association . . . ." Concurrence at 641.

Fourth, by law, mandatory payroll deductions for agency shop fees (for employed nonunion members) payable to the union may not include money to be contributed by the union for political purposes; whereas there is no such per se restriction on dues from union members. RCW 42.17.760.[101] (The WEA even argues in its brief that teachers who do not approve of WEA political expenditures could avoid their proportional contribution by resigning from the union and thereby subjecting themselves to reduced withholding of agency fees which could not be used for political purposes. Response Br. of Resp't Educational Ass'n at 6.) Therefore, by logical inference, the employer is on notice that the difference between agency fees and union dues is probably attributable to political use.

Fifth, employers may have received actual notice of how these mandatory deductions would be used for political purposes from affected employees and others. (To comply with the majority opinion this is all a potential future plaintiff need do.) For example, the school districts' payroll officers received a memorandum from the WEA in the summer of 1994 alerting them that to compensate for the loss of mandatory WEA-Political Action Committee dues the new deduction would be called "Political Education." CP at 151. This none-too-subtle new moniker put school districts on notice as to what use such funds were destined.

It is a reasonable inference from the combination of these facts that the school districts had actual, or at least constructive, knowledge of the political use of the payroll deductions. Granted, knowledge may be a question of fact; however, it is a material one that would preclude summary judgment and require reversal.

Notwithstanding, I can find no requirement for actual knowledge in the plain language of this statute and would not invent one from the bench. Under the plain language

---

[101] A labor organization may not use agency shop fees paid by an individual who is not a member of the organization to make contributions or expenditures to influence an election or to operate a political committee, unless affirmatively authorized by the individual.

of this statute the buck stops with the employer who must take responsibility for the ultimate misappropriation of any portion of wage deductions contrary to law. Perhaps the employers would be well advised to make some reasonable inquiry, or take some reasonable precautions by contract or other device with its payees; however, that is up to them, not this court.

### Liberal construction if ambiguity is found

Although I find no ambiguity in this statute, even if there were one the result would be no different.

First, this chapter of the revised code is "intended to be remedial and shall be liberally construed . . . ." RCW 42.17.945; *see also* RCW 42.17.010(11).

> This liberal construction mandate means the coverage of the Act's provisions must be liberally construed and its exceptions narrowly confined. *Vogt v. Seattle-First Nat'l Bank*, 117 Wn.2d 541, 552, 817 P.2d 1364 (1991).

> The intent of the people in enacting Initiative 134, which we must effectuate, is found in the statute itself.

*Senate Republican Campaign Comm. v. Public Disclosure Comm'n*, 133 Wn.2d 229, 247-48, 943 P.2d 1358 (1997) (Johnson, J., dissenting).

I think a liberal construction of the statute is inconsistent with the employers' position because in effect the employers' view would allow an employee's money to be put to a political use without his consent and against his wishes so long as the contribution to a political campaign is washed through a middleman. Based on the text at issue I think the electorate was attempting to achieve that noble principle well stated by no less than Thomas Jefferson: "[T]o compel a man to furnish contributions of money for the propagation of opinions which he disbelieves, is sinful and tyrannical . . . ."[102] But this principle is defeated by a money laundering scheme such as we have here.

---

[102]*Everson v. Board of Educ.*, 330 U.S. 1, 28, 67 S. Ct. 504, 91 L. Ed. 711, 168 A.L.R. 1392 (1947) (Rutledge, J., dissenting), *quoted in* " 'A Bill for

The majority puts weight on the administrative regulation adopted by the Public Disclosure Commission to support its view. However read literally the regulation requires a written authorization prior to a wage deduction "[f]or use, specifically designated by the contributing employee, for political contributions to candidates for state or local office . . . ." WAC 390-17-100(1)(b).[103] Therefore if money from a mandatory wage deduction is applied "for use" as a political contribution without the employee's consent, then we are back where we started in our analysis.

On the other hand, if we construe the regulation to mean unauthorized deductions may be "used" for political contributions without any legal liability (even with employer knowledge of the ultimate intended political recipient), then the regulation narrows the scope of the statute even as construed by the majority. In such a situation the statute must control because it is axiomatic that administrative rules or regulations cannot amend or change legislative enactments. *See, e.g. Department of Ecology v. Theodoratus*, 135 Wn.2d 582, 600, 957 P.2d 1241 (1998).

### Injunctive relief

Amicus Foundation for Campaign Finance Compliance argues that even if a prior violation of the act has not been

Establishing Religious Freedom,' enacted by the General Assembly of Virginia, January 19, 1786. *See* 1 RANDALL, THE LIFE OF THOMAS JEFFERSON (1858) 219-220; XII HENING'S STATUTES OF VIRGINIA (1823) 84." *Id.* at 28 n.1.

[103] **WAC 390-17-100. Contribution withholding authorizations.** (1) For purposes of RCW 42.17.680(3), all political contribution withholding authorizations existing on or before January 1, 1993, will expire no later than December 31, 1993. Beginning January 1, 1994, each employer or other person who withholds or otherwise diverts a portion of wages or salary of a Washington resident or a nonresident whose primary place of work is in the state of Washington.

(a) For the purpose of making one or more contributions to any political committee required to report pursuant to RCW 42.17.040, [42.17].050, [42.17].060 or [42.17].090 (1)(k), or

(b) For use, specifically designated by the contributing employee, for political contributions to candidates for state or local office is required to have on file the written authorization of the individual subject to the payroll withholding or diversion of wages.

made out, RCW 42.17.390(6) vests authority in the court to enjoin "any person to prevent the doing of any act herein prohibited . . . ."

Only a snapshot, "its-out-of-my-department," approach urged by the employers which absolves them of *any* responsibility—even upon actual knowledge that mandatory deduction money will be used for political purposes— would save the school districts from *ongoing*, or future, violations of subsection 680(3). Now, if not then, it is patently obvious to anyone of educable age that the WEA will continue to use dues money for political purposes in the future just as it has in the past. Therefore future unauthorized deductions from employee salaries for political use cannot be justified under the pretense that the employer did not know what was going on, at least short of some overt change in WEA policy. Thus if we are to do anything to maintain the efficacy of the initiative process in lieu of outright judicial repeal of this section of the initiative, a remand to at least consider the propriety of injunctive relief is amply justified.

After all, this case started after the WEA contributed $713,841 to the political committees opposed to the school voucher and charter schools initiatives in 1996 (I-173 and I-177) (CP at 168), and it seems very likely the WEA will be active on behalf of candidates and ballot measures in the coming election year as well. The WEA may certainly continue these activities insofar as they are otherwise lawful; however, to fulfill the purposes of this initiative, mandatory deductions from member salaries must be accompanied by signed authorizations from the affected employees if *employers* are to comply with the law, even as the majority sees it. Our duty is to protect the rights of these employees under this initiative enactment until or unless the legislature sees fit to amend or repeal it.

It is not our prerogative to substitute our will for that of the electorate, short of constitutional violation—nor do I think it is appropriate for our majority to defeat the

language and purpose of this initiative which our fellow citizens have adopted.

For these reasons I concur in part and dissent in part.