[No. 74152-2. En Banc.]
Argued March 25, 2004.     Decided October 21, 2004.

ROBERT EDELMAN, *Respondent*, v. THE STATE OF WASHINGTON *on the relation of The Public Disclosure Commission, Petitioner.*

*Christine O. Gregoire, Attorney General*, and *Nancy J. Krier, Senior Counsel*, for petitioner.

*Kevin B. Hansen* and *John J. White, Jr.* (of *Livengood, Carter, Tjossem, Fitzgerald & Alskog, L.L.P.*), for respondent.

*James D. Oswald* on behalf of Washington State Labor Council, amicus curiae.

JOHNSON, J. — We granted review to determine whether the Public Disclosure Commission (PDC) exceeded its authority in promulgating WAC 390-16-311 to interpret a perceived ambiguity in RCW 42.17.660. Reversing the trial court, the Court of Appeals held that the PDC exceeded its authority in making a rule that alters an unambiguous statute. We affirm.

## BACKGROUND

In 1992, the people of Washington passed Initiative 134 (I-134), the Fair Campaign Practices Act (chapter 42.17 RCW). LAWS OF 1993, ch. 2, §§ 1-36. The legislature passed RCW 42.17.640 and RCW 42.17.660 to implement this initiative. LAWS OF 1993, ch. 2, §§ 4, 6. The initiative's purpose was threefold: (1) to ensure that individuals and interest groups have a fair and equal opportunity to influence elective and governmental processes, (2) to reduce the influence of large organizational contributors, and (3) to restore public trust in governmental institutions and the electoral process. *See* RCW 42.17.620.

The legislation sought to accomplish the initiative's purpose by establishing campaign contribution limits. RCW 42.17.640(1) limits individual campaign contributions to $500 per candidate ($1,000 for statewide office).[1] At issue in this case is RCW 42.17.660, which attributes contributions by certain related entities.

RCW 42.17.660 provides:

**Attribution of contributions by controlled entities.** For purposes of this chapter:

(1) A contribution by a political committee with funds that have all been contributed by one person who exercises exclusive control over the distribution of the funds of the political committee is a contribution by the controlling person.

(2) Two or more entities are treated as a single entity if one of the two or more entities is a subsidiary, branch, or department of a corporation or a local unit, branch, or affiliate of a trade association, labor union, or collective bargaining association. All contributions made by a person or political committee whose contribution or expenditure activity is financed, maintained, or controlled by a trade association, labor union, collective bargaining organization, or the local unit of a trade association, labor union, or collective bargaining organization are considered made by the same person or entity.

---

[1] The PDC adjusts the figure for inflation. RCW 42.17.690.

The legislature has empowered the PDC to interpret, implement, investigate, and determine violations of the State's campaign finance requirements and contribution limits, and to adopt rules to carry out these tasks. *See* RCW 42.17.370(1). Soon after I-134 was approved by the voters and its enabling statutes were promulgated, the PDC began receiving inquires about what rules it might adopt to implement RCW 42.17.660, especially RCW 42.17.660(2). The questions focused on the effect of the individual campaign contribution limit when a parent or umbrella organization does not contribute to an election campaign governed by RCW 42.17.640 and RCW 42.17.660, and the definition of "affiliate" within the meaning of the statute for aggregation of contributions subject to a single $500 limit.

After holding several public meetings and rule-making hearings, the PDC concluded that RCW 42.17.660 is ambiguous. To clarify this perceived ambiguity, the PDC adopted WAC 390-16-309 (Rule 309) and WAC 390-16-311 (Rule 311) in 1994. Rule 309 essentially defines "affiliate" as it is used in the statute. Rule 311 essentially releases local affiliates from having to combine their contributions toward a single limit under RCW 42.17.640 and RCW 42.17.660 when the parent or umbrella of the organization does not contribute to a particular campaign.[2]

---

[2] **"WAC 390-16-311 Automatically affiliated entities maintaining separate contribution limits.** (1) If two or more entities are affiliated pursuant to WAC 390-16-309(1), the parent corporation, national or international labor union or state body of such national or international labor union, trade association or state body of such trade association, national or state collective bargaining organization or national or state membership organization (hereinafter called the parent or umbrella organization) automatically shares a single contribution limit with each of its subsidiary corporations, corporate branches or departments or with each of its local units. However, absent satisfying one of the affiliation factors set forth in WAC 390-16-309(3), a subsidiary corporation or local unit shall maintain its own contribution limit if the parent or umbrella organization does not participate in an election campaign with respect to a candidate defined in RCW 42.17.630(3). If the parent or umbrella organization engages in any of the following activities, a subsidiary corporation or local unit shares the contribution limit with the parent or umbrella organization with respect to a candidate:

"a) Making either a monetary or in-kind contribution to a candidate;

"b) Making an independent expenditure in support of or opposition to a candidate;

In December 2000, Mr. Edelman petitioned the PDC to amend Rule 309 and to repeal Rule 311.[3] On February 27, 2001, the PDC conducted an open public hearing regarding Mr. Edelman's petition. Edelman argued that Rule 311 effectively amended RCW 42.17.660, did not follow similar federal laws, and was contrary to the purpose and intent of the initiative and the statute. The PDC rejected Mr. Edelman's petition reasoning that Rule 311 is a practical application of the statute consistent with the scope of the PDC's authority. As a remedy, the PDC recommended that Edelman ask the legislature to impose additional restrictions on large organizations' ability to contribute to state political campaigns.

Edelman sought review of the PDC's decision by the governor, who rejected the same arguments that Edelman had presented to the PDC. Edelman next sought judicial review in Thurston County Superior Court. Edelman argued that (1) Rule 311 is contrary to I-134; (2) the PDC had exceeded its statutory authority in adopting the rule; (3) the rule is arbitrary, capricious, and inconsistent with federal campaign laws and regulations; and (4) the PDC acted improperly and contrary to law when it denied his petition to repeal the rule.

"c) Endorsing a candidate prior to a contribution being made by a subsidiary corporation or local unit with respect to that candidate or that candidate's opponent;

"d) Making a recommendation regarding whether a candidate should be supported or opposed prior to a contribution being made by a subsidiary corporation or local unit with respect to that candidate or that candidate's opponent; or

"e) Directly or indirectly collaborating or consulting with a subsidiary corporation or local unit on matters relating to the support of or opposition to a candidate, including but not limited to, the amount of a contribution, when a contribution should be given, and what assistance, services or independent expenditures, if any, will be made or should be made in support of or opposition to a candidate.

"(2) If the parent or umbrella organization participates in an election campaign, a subsidiary corporation or local unit, which shares a contribution limit with the parent or umbrella organization pursuant to WAC 390-16-309(1), may nevertheless contribute to any candidate regarding whom the parent or umbrella organization has not engaged in any of the activities set forth in subsection (1) of this section up to the contribution limits set forth in RCW 42.17.640."

[3] Rule 309 is not at issue on appeal.

The superior court dismissed Edelman's petition and Edelman appealed. In a published opinion, *Edelman v. State ex rel. Public Disclosure Commission*, 116 Wn. App. 876, 68 P.3d 296 (2003), the Court of Appeals reversed, holding that RCW 42.17.660 is unambiguous and that Rule 311 improperly modifies the statute. Accordingly, the Court of Appeals invalidated Rule 311.

The PDC now seeks reversal of the Court of Appeals decision, arguing that Rule 311 is within its interpretive rule-making authority.

## ANALYSIS

### Statutory Interpretation

■■ An agency charged with the administration and enforcement of a statute may interpret ambiguities within the statutory language through the rule-making process. However, we accord no deference to an agency's rule where no ambiguity exists. Courts retain the ultimate authority to interpret a statute. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 627-28, 869 P.2d 1034 (1994).

■ The PDC argues that Rule 311 interprets a "gap" in the statutory language of RCW 42.17.660(2) because the language does not address what happens when a parent organization "stays out" of a state campaign. However, as the Court of Appeals correctly noted, the plain language does address it. RCW 42.17.660(2) specifies a relationship between entities in which those entities are considered a single entity for purposes of campaign contribution limits. When any entity that fits within the statutorily-specified relationship, including the parent or umbrella organization, contributes to a political campaign, the contribution is considered to have been made by all of the entities in that relationship. If the legislature intended to create an exemption for situations in which the parent organization does not participate, it would have done so in the language of the statute. It didn't.

We agree with the Court of Appeals that Rule 311 is consistent with RCW 42.17.660(2) only if the word "contributing" is read into the language of the statute as follows:

> "Two or more entities are treated as a single entity if one of the two or more entities is a subsidiary, branch, or department of a [*contributing*] corporation or a local unit, branch, or affiliate of a [*contributing*] trade association, labor union, or collective bargaining association."

*Edelman v. State ex rel. Pub. Disclosure Comm'n*, 116 Wn. App. 876, 885, 68 P.3d 296 (2003) (alterations in original) (quoting RCW 42.17.660(2)). We find no such legislative intent.

The statute unambiguously treats a parent or umbrella entity and all entities sharing that parent or umbrella as a single entity for purposes of the single campaign contribution limit. We will not strain to find ambiguity where the language of the statute is clear. *State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n*, 140 Wn.2d 615, 632, 999 P.2d 602 (2000). We hold that no ambiguity exists in the language of RCW 42.17.660 that requires the PDC to interpret the statute's effect upon affiliated subsidiary or local entities if the parent or umbrella does not make a contribution.

## PDC Rule-Making Authority

Rule 311 is inconsistent with the plain statutory language, and we must decide whether the PDC exceeded its statutory authority by promulgating the rule. An agency may not promulgate a rule that amends or changes a legislative enactment. *Evergreen Freedom*, 140 Wn.2d at 634. Rule 311 limits the effect of RCW 42.17.660 by creating a broad exemption to the single contribution limit where no such exemption exists in the statute. The plain language of RCW 42.17.660(2) does not require participation by the parent or umbrella for the single contribution limit to apply, but rather specifically provides that all entities fitting within a defined relationship are to be

treated as a single entity. Rule 311 impermissibly adds to the statute the requirement of participation by the parent or umbrella for the single contribution limit to apply. The rule therefore exceeds the PDC's rule-making authority.

## Fees and Costs

■ Edelman also requests, without argument, attorney fees and costs pursuant to RCW 4.84.350. RCW 4.84.350(1) states that "[a] court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust." Edelman provides no basis by which he would be entitled to fees under RCW 4.84.350 or whether he even meets the definition of a "qualified party" under the statute. *See* RCW 4.84.340(5). Accordingly, we deny Edelman's request for attorney fees.

We affirm.

ALEXANDER, C.J., and SANDERS, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

FAIRHURST, J. (dissenting) — I believe RCW 42.17.660(2) is ambiguous and that the Public Disclosure Commission (PDC) did not exceed its rule-making authority. I would reverse.[4]

The extent of an agency's rule-making authority is a question of law reviewed de novo. *Local 2916, IAFF v. Pub. Employment Relations Comm'n*, 128 Wn.2d 375, 379, 907 P.2d 1204 (1995). A court must declare an administrative rule or regulation invalid if it (1) violates constitutional provisions, (2) exceeds the agency's statutory authority, (3) was adopted without compliance to statutory rule-making

---

[4] Robert Edelman also asked for attorney fees and costs pursuant to RCW 4.84.350 for the first time in his answer to the petition for review. My conclusion moots the request.

procedures, or (4) is arbitrary and capricious. RCW 34-.05.570(2)(c). The party challenging the rule bears the burden of demonstrating the invalidity of the rule or regulation. RCW 34.05.570(1)(a); *Manor v. Nestle Food Co.*, 131 Wn.2d 439, 447, 932 P.2d 628, 945 P.2d 1119 (1997).

Robert Edelman challenges the rule on grounds that RCW 42.17.660 is not ambiguous and, therefore, the PDC's rule interpreting the statute exceeds the agency's authority to clarify an ambiguity and, even if RCW 42.17.660 is ambiguous, WAC 390-16-311 (Rule 311) exceeds the PDC's authority to interpret the statute and the rule is arbitrary and capricious.

## A. Ambiguity of RCW 42.17.660

Courts retain the ultimate authority to interpret a statute. Whether a court accords deference to an agency's construction of the statute depends on whether the statute is ambiguous. *See Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 627-28, 869 P.2d 1034 (1994). A statute is ambiguous if it is susceptible to more than one meaning. *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 778, 903 P.2d 443 (1995).

The first sentence of RCW 42.17.660(2) reads: "Two or more entities are treated as a single entity if one of the two or more entities is a subsidiary, branch, or department of a corporation or a local unit, branch, or affiliate of a trade association, labor union, or collective bargaining association." Edelman argues that this language is clear but the PDC points out several ambiguities.

First, the PDC argues that the statutory language does not define the term "affiliate," which does not enjoy a single plain meaning and may connote different relationships. *Black's Law Dictionary* defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." BLACK's LAW DICTIONARY 63 (8th ed. 2004). This definition is entirely unhelpful in defining the meaning of "affiliate" in reference to a trade association or labor union.

For example, under a broad reading of the term, the Washington State Labor Council conceivably could be considered an affiliate of any labor union in the state.

Second, the PDC argues that while RCW 42.17.660(2) identifies one of the two related entities that may be required to share a contribution limit,[5] it is unclear about the nature of the second entity. The statute does not clearly associate the first entity to which it refers with the corporation, trade association, labor union, or collective bargaining association to which it thereafter refers. The plain language literally reads that the second entity need not share any characteristics with the first entity for the single contribution limit to apply. However, it seems plain that RCW 42.17.660 explicitly reflects concern with ensuring that campaign contributions and attendant contribution limits are applied to the person or entity that actually controls or directs the contribution.

Third, the PDC argues that the statutory language is unclear as to whether two subordinate or local units should share a single contribution limit. The statute addresses only the situation where "*one* of the two or more entities" is a subordinate or local unit. RCW 42.17.660(2) (emphasis added). Plainly read, this language applies only where "vertical affiliation" between parent and subordinate exists. The drafters could have used language addressing whether entities must share a single contribution limit in the situation where "one or more" of the entities is a subordinate or local unit. Because the drafters did not use such language, they created a gap in the statutory language that the PDC filled after numerous inquiries about how to interpret the statute.

Finally, the PDC argues that the history of the rule making at issue confirms this ambiguity. The PDC heard from a number of potentially affected entities seeking

---

[5] "Two or more entities are treated as a single entity if one of the two or more entities is a subsidiary, branch, or department of a corporation or a local unit, branch or affiliate of a trade association, labor union, or collective bargaining association." RCW 42.17.660(2).

clarification of when contribution limits would apply. The PDC also received over 35 written communications between 1992 and 1994 providing input on the statute and on possible rules. Administrative Record (AR) at A11-15, A19-30, A80-82, A86-95, A101-109, A170-171, A200-201, A236-429, A470-485, A488-531, A565-572, and A594-603. A number of groups gave input during at least seven public meetings and hearings relating to the rule making. AR at A53-79, A113-169, A173-178, A205-235, A486-87, A537-64, and A604-11. In short, the record reflects that more than one reasonable interpretation of the statute created an ambiguity that required clarification by the PDC.

However, Edelman argues that a statute is not necessarily ambiguous simply because of two different interpretations. Citing to *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 242, 59 P.3d 655 (2002), Edelman argues that the relevant question is whether those interpretations are sufficiently reasonable to warrant further inquiry. Edelman asserts that RCW 42.17.660(2) is not ambiguous in light of the legislative history and purpose.

The legislature codified the findings of Initiative 134 (I-134) as follows:

The people of the state of Washington find and declare that:

(1) The financial strength of certain individuals or organizations should not permit them to exercise a disproportionate or controlling influence on the election of candidates.

(2) Rapidly increasing political campaign costs have led many candidates to raise larger percentages of money from special interests with a specific financial stake in matters before state government. This has caused the public perception that decisions of elected officials are being improperly influenced by monetary contributions.

(3) Candidates are raising less money in small contributions from individuals and more money from special interests. This has created the public perception that individuals have an insignificant role to play in the political process.

RCW 42.17.610.

The legislature codified the intent of the Fair Campaign Practices Act as follows:

> By limiting campaign contributions, the people intend to:
>
> (1) Ensure that individuals and interest groups have fair and equal opportunity to influence elective and governmental processes;
>
> (2) Reduce the influence of large organizational contributors; and
>
> (3) Restore public trust in governmental institutions and the electoral process.

RCW 42.17.620.

Edelman's argument that the legislative purpose and intent clarifies the ambiguity does not directly respond to the PDC's arguments because neither RCW 42.17.610 nor .620 addresses the two primary areas of ambiguity pointed out by the PDC—the meaning of "affiliate" and the relationship between the entities to which the first sentence of RCW 42.17.660(2) refers.

These ambiguities are in the statute for which the PDC has statutory authority to interpret through rule making. The practical impact of the ambiguities comes into play when the entity active in a political campaign is a smaller entity loosely associated with one or more larger entities, rather than an entity with a broad geographic scope. The PDC promulgated WAC 390-16-309 (Rule 309) and Rule 311 to address these concerns. Without Rules 309 and 311, the statute's effect on the smaller unit is ambiguous.

I would find that Edelman has not met his burden of showing that the statute is not ambiguous.

## B. Reasonableness of Rule 311

Concluding that the statute is ambiguous does not end the inquiry. We still must decide whether the PDC exceeded its authority when it promulgated Rule 311[6] to clarify the

---

[6] **WAC 390-16-311 Automatically affiliated entities maintaining separate contribution limits.** (1) If two or more entities are affiliated pursuant to

ambiguity. Where a statute administered by the the PDC is ambiguous, the agency is permitted, both under its statutes and case law, to fill in the gaps and interpret the statute through rule making. RCW 42.17.370; *State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n*, 140 Wn.2d 615, 634, 999 P.2d 602 (2000). We have deferred to the PDC's interpretation of I-134 in its rule-making process where the rules are promulgated to "fill the gaps" of that initiative. *Id.* We presume a rule is valid if it is " 'reasonably consistent

---

WAC 390-16-309(1), the parent corporation, national or international labor union or state body of such national or international labor union, trade association or state body of such trade association, national or state collective bargaining organization or national or state membership organization (hereinafter called the parent or umbrella organization) automatically shares a single contribution limit with each of its subsidiary corporations, corporate branches or departments or with each of its local units. However, absent satisfying one of the affiliation factors set forth in WAC 390-16-309(3), a subsidiary corporation or local unit shall maintain its own contribution limit if the parent or umbrella organization does not participate in an election campaign with respect to a candidate defined in RCW 42.17.630(3). If the parent or umbrella organization engages in any of the following activities, a subsidiary corporation or local unit shares the contribution limit with the parent or umbrella organization with respect to a candidate:

a) Making either a monetary or in-kind contribution to a candidate;

b) Making an independent expenditure in support of or opposition to a candidate;

c) Endorsing a candidate prior to a contribution being made by a subsidiary corporation or local unit with respect to that candidate or that candidate's opponent;

d) Making a recommendation regarding whether a candidate should be supported or opposed prior to a contribution being made by a subsidiary corporation or local unit with respect to that candidate or that candidate's opponent; or

e) Directly or indirectly collaborating or consulting with a subsidiary corporation or local unit on matters relating to the support of or opposition to a candidate, including but not limited to, the amount of a contribution, when a contribution should be given, and what assistance, services or independent expenditures, if any, will be made or should be made in support of or opposition to a candidate.

(2) If the parent or umbrella organization participates in an election campaign, a subsidiary corporation or local unit, which shares a contribution limit with the parent or umbrella organization pursuant to WAC 390-16-309(1), may nevertheless contribute to any candidate regarding whom the parent or umbrella organization has not engaged in any of the activities set forth in subsection (1) of this section up to the contribution limits set forth in RCW 42.17.640.

with the statute being implemented.' " *Id.* at 634-35 (quoting *Green River Cmty. Coll., Dist. No. 10 v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 112, 622 P.2d 826 (1980)). When the legislature has neither repudiated nor amended a statute codified as part of I-134 in response to a PDC rule to implement the statute, the PDC's rule is entitled to " 'great weight.' " *Id.* at 635-36 (quoting *Green River*, 95 Wn.2d at 117-18). Since the legislature has done nothing in response to the rule, it appears that Edelman has not satisfied this heavy burden.

Edelman argues that Rule 311 is inconsistent with Rule 309.[7] However, Rule 309 clarifies the ambiguity as to the

---

[7]

**WAC 390-16-309 Identification of affiliated entities.** (1) Two or more entities are treated as a single person and share one contribution limit under RCW 42.17.640 if one of the entities is:

(a) A corporation and the other is a subsidiary, branch or division of the corporation;

(b) A national or international labor union, or state body of such national or international labor union, and the other is a local union or other subordinate organization of such national or international labor union or state body;

(c) A trade association or state body of such trade association and the other is a branch or local unit of such trade association;

(d) A national or state collective bargaining organization and the other is a branch or local unit of such national or state collective bargaining organization;

(e) A national or international federation of labor unions, or a state federation of labor unions, and the other is a local body of such federation;

(f) A membership organization and the other is a local unit or branch of such membership organization;

(g) Any entity referenced in (a) through (f) above and a political committee established, financed, maintained or controlled by that entity.

(2) For purposes of RCW 42.17.640, two entities shall not be treated as a single entity solely because one of the entities is a dues paying member of the other entity.

(3) In addition to paragraph (1) above, two or more entities shall be treated as one entity and share a contribution limit under RCW 42.17.640 if one of the entities is established, financed, maintained or controlled by the other, as evidenced by any one of the following factors:

(a) Whether one entity owns a controlling interest in the voting stock or securities of another entity; or

(b) Whether one entity has authority or the ability to direct or participate, other than through a vote as a member, in the governance of another entity through provisions of constitution, bylaws, contract or other formal or informal procedure or has authority or the ability to hire, appoint, demote or otherwise

identity of the later entity to which RCW 42.17.660(2) refers in its first sentence, and the relationship between all of the entities referenced in the statute. Rule 311, on the other hand, clarifies a different ambiguity of RCW 42-.17.660(2)—whether subsidiaries of a parent or umbrella entity are bound to a single contribution limit when the parent or umbrella does not participate in the election process. The rules complement each other. Rule 309 creates a default that all entities within and subsidiary to a parent or umbrella entity are affiliated even though the statute does not explicitly support that interpretation. This default nearly eliminates *all* impact that a large entity would have on the election process. Because the legislature only intended the statute to lessen the impact of large, powerful entities, Rule 311 was necessary to dampen the effect of Rule 309. Specifically, Rule 311 eliminates the single contribution limit when the only participating entities are smaller, independent entities and the large parent entity, whose influence the statute is intended to reduce, does not participate in the political process.

Citing to *Department of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002), Edelman also argues that Rule 311 eviscerates the express intent of I-134 and is void. The party attacking the validity of the rule must present "compelling reasons" why the rule is in conflict with the intent and purpose of the statute being implemented. *Hi-Starr, Inc. v. Liquor Control Bd.*, 106 Wn.2d 455, 459, 722 P.2d 808 (1986). The legislative intent

control, other than through a vote as a member, the officers or other decision making employees or members of another entity; or

(c) Whether (i) one entity has a common or overlapping membership with another which indicates either a formal or ongoing relationship between the two organizations or the creation of a successor entity and (ii) the entity has an active or significant role in the formation of the other entity and (iii) the entities have similar patterns of contributions or contributors which indicate a formal or ongoing relationship between the entities; or

(d) Whether one entity provides, causes or arranges, funds, services or goods in a significant amount or on an ongoing basis, through direct or indirect means to the other entity, for less than full consideration. Full consideration includes the payment of membership dues.

codified in RCW 42.17.620(2) requires the PDC to *reduce* not *eliminate* contributions from large organizations. Rule 311 reduces contributions from large organizations, which the rule interprets to be a participating parent or umbrella organization. The rule is consistent with the legislative intent and Edelman fails to carry the heavy burden of proof necessary to invalidate it.

The PDC reasonably interpreted RCW 42.17.640 and .660 to require the sharing of a single campaign contribution when a corporate or labor organization and a related organization function as a single entity, and not to preclude separate campaign contributions when entities act independently and are not subject to the influence or control of the corporation or labor organization.

Finally, Edelman argues that the PDC's implementation of Rule 311 conflicts with an analogous federal campaign rule. The PDC considered the approach of the Federal Elections Commission, but ultimately determined that it must adopt its own rules given the different history and text of the Washington statute. Edelman cites no authority stating that federal rule making preempts this state's implementation of its own statutes.

The purpose of I-134 was to reduce the influence of large organizational contributions. When those large organizations are not involved in a campaign, the initiative's purpose is not served by restricting small independent organizations whose views may well differ from—and are not controlled by—the umbrella organization. By failing to recognize and uphold Rule 311, the Court of Appeals erred. I respectfully dissent.

MADSEN and IRELAND, JJ., concur with FAIRHURST, J.