[No. 22989-1-III. Division Three. April 19, 2005.]

TED RASMUSSEN FARMS, L.L.C., *Appellant*, v. THE DEPARTMENT OF ECOLOGY, *Respondent*.

*Timothy H. Esser* (of *Libey, Ensley, Esser & Nelson*), for appellant.

*Robert M. McKenna, Attorney General,* and *Leslie R. Seffern, Assistant,* for respondent.

¶1 SWEENEY, J. — The Washington Clean Air Act (chapter 70.94 RCW) required the Department of Ecology to study and then devise alternatives to the standard farming practice of burning perennial grass fields. Once Ecology certified an alternative, burning would no longer be allowed. Mechanical residue management, primarily by baling, is that certified alternative. WAC 173-430-045(2). Ecology's regulations create an exception to the baling requirement, however, if the slope of the field is too steep to bale. WAC 173-430-045(4)(a). But the rule goes on to ban burning even

of these steep fields after the third harvest year—the crop must then be torn out. WAC 173-430-045(4)(a)(iii). Ecology fined Ted Rasmussen Farms, L.L.C., $10,000 for burning such a field. Rasmussen challenges the tear-out requirement. It contends it is beyond the purview of the enabling legislation and arbitrary and capricious. We agree and reverse the decision of the trial judge that affirmed Rasmussen's penalty.

## FACTS

¶2 Ted Rasmussen Farms, L.L.C., leased a 100-acre Kentucky bluegrass field in Whitman County in 1998. The field had been in continuous grass seed production since 1988. The field is suitable primarily for bluegrass because of its extreme slope and resultant erosion.

¶3 Plant residue must be cleared from grass fields after the seed is harvested. Historically, this was done by burning the field. Open field burning became illegal in Washington in 1998. RCW 70.94.656. In a two-step process, a burn waiver must now be obtained from the Department of Ecology as a prerequisite to the issuance of a burn permit.

¶4 Rasmussen's field had been burned every year for 10 years. The field was not burned in 1997. Instead, the plant residue on those parts of the field accessible by mechanical balers was cleared by baling. The remainder was not cleared. Rasmussen applied for a field burning waiver at the end of the 1998 growing season.

¶5 The general rule is that a field may not be burned if mechanical methods of clearing postharvest residue, such as baling, are commercially and practically feasible. WAC 173-430-045(2). One of the few exceptions to the burn ban is for fields *too steep* to be mechanically cleared. WAC 173-430-045(4)(a). And this was the basis for Rasmussen's waiver application. Its field is on a 46.5 percent slope so mechanical residue clearing is impractical. Ecology does not dispute this.

¶6 Nonetheless Ecology denied this 1998 application based on its regulation allowing a burn waiver *only* be-

tween the *first* and *fourth* harvest seasons. And, of course, this field was well past its fourth year of production.

¶7 Rasmussen harvested another grass seed crop from the same field in 1999. And it applied again for a waiver. Ecology again denied its application on the same grounds— the field was past its fourth year of production, and waivers were permitted only between the first and fourth seasons.

¶8 Rasmussen burned the field before Ecology issued its denial notice. And Ecology imposed a $10,000 fine.

¶9 Rasmussen appealed to the Pollution Control Hearings Board, challenging the validity of Ecology's field-age restrictions. It asserted that the plain language of the enabling act requires Ecology to grant waivers unless and until a mechanical residue clearing method is certified for steep slope fields. The Board declined to address the validity of the agency rule and granted Ecology's motion for summary judgment.

¶10 Rasmussen sought judicial review and asked the superior court to invalidate the rule and rescind the penalty. The superior court concluded that the five-year rotation requirement (a) was within Ecology's statutory authority and (b) was not arbitrary or capricious. Accordingly, the court affirmed the Board. Rasmussen appeals the superior court order.

## DISCUSSION

¶11 Rasmussen challenges Ecology's imposition of the five-year rotation rule. It contends the enabling legislation requires Ecology to certify a practical agricultural alternative to burning before Ecology can withhold waivers. And no practical alternative has ever been certified for steep slope fields. Dryland grass fields are continuously productive for 10 or more years, Rasmussen argues, and its own field was in its 12th productive year. Destroying the crop every five years—what Ecology calls "tillage"—is not, Rasmussen contends, a practical residue management alternative. By definition, it argues, the "alternatives" contemplated by the

legislature are field clearing methods consistent with continued bluegrass production, not destruction of the crop.

¶12 Ecology defends the rule. The legislature mandated that Ecology reduce or eliminate field burning. Whatever regulations Ecology adopts are, therefore, within its statutory authority. In determining whether a rule is arbitrary and capricious, the court asks whether the manner of the rule's adoption was reasonable, not whether the rule itself is reasonable. Here, the five-year rotation rule was adopted after a rule-making process that resulted in a 60,000-page record. This is not, then, arbitrary and capricious.

¶13 Ecology argues further that the statute authorizes it to certify mechanical alternatives to burning that are reasonably available. Tearing out a field after four growing seasons is mechanical. And it is an alternative to burning. It results in reduced smoke emissions and improved community health. Tearing out is reasonably available for steep slope fields. Ecology then concludes that the statute authorizes the denial of burn permits for steep slope fields after the fourth growing season. Moreover, Ecology reviewed voluminous amounts of information about mechanical techniques and shorter rotations before selecting the five-year rotation as the optimum cycle.

Issue

¶14 The question presented is whether tearing out a grass crop halfway through its productive life is an enforceable alternative to field burning as a residue management technique under the Washington Clean Air Act (chapter 70.94 RCW).

Standard of Review/Canons of Construction

¶15 We interpret statutes de novo. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 587, 90 P.3d 659 (2004). If a statute falls within the agency's expertise and is ambiguous, we accord great weight to the agency's interpretation. *Id.* We accord no deference, however, to the agency's interpretation if the statute is unam-

biguous. *Edelman v. State ex rel. Pub. Disclosure Comm'n,* 152 Wn.2d 584, 590, 99 P.3d 386 (2004). A statute is ambiguous if it is capable of more than one reasonable interpretation. *Edelman v. State ex rel. Pub. Disclosure Comm'n,* 116 Wn. App. 876, 882, 68 P.3d 296 (2003), *aff'd,* 152 Wn.2d 584, 99 P.3d 386 (2004).

¶16 We find the relevant statute here ambiguous.

VALIDITY OF ECOLOGY'S RULE

¶17 An agency rule is invalid if we find that it exceeds the statutory authority of the agency or is arbitrary and capricious. RCW 34.05.570(2)(c). The burden of demonstrating the invalidity of a rule is upon the challenger, here Rasmussen. RCW 34.05.570(1)(a).

¶18 The legislation enabling Ecology to adopt rules regulating field burning is the Washington Clean Air Act (the Act), chapter 70.94 RCW. The Act prohibits open agricultural field burning without a permit and authorizes Ecology to adopt rules for issuing permits. RCW 70-.94.650(1)(c). In propagating its rules, the Act instructs Ecology to develop and promote alternatives to burning for clearing postharvest residue. RCW 70.94.656. Once Ecology certifies an alternative method as commercially practical and reasonably available, the statute requires Ecology to cease issuing burning permits. RCW 70.94.656(3).

¶19 The Act is not calculated to prohibit or eliminate the open burning of field and turf grasses grown for seed. Rather, the Act requires that "strong efforts should be made to minimize adverse effects on air quality" from burning. RCW 70.94.656. The statute's intent is to "promote the development of economical and practical alternate agricultural practices to such burning, and to provide for interim regulation of such burning until practical alternates are found." *Id.*

¶20 The Act instructs the Department of Ecology to commission studies by Washington State University "for the exploration and identification of economical and prac-

tical alternate agricultural practices" to open field burning. RCW 70.94.656(1). When, after appropriate public hearings, Ecology concludes that any procedure constitutes "a practical alternate agricultural practice to the open burning of field or turf grasses grown for seed," Ecology shall certify the alternative. RCW 70.94.656(3). Thereafter, whenever the alternative is "reasonably available" no burn permit may be issued. *Id.*

¶21 Ecology's rules must then develop and promote alternatives to burning for clearing postharvest residue. RCW 70.94.656. But only after Ecology certifies an alternative method as economically practical does the statute allow Ecology to start denying field burning permits. RCW 70.94.656(3).

¶22 And Ecology did approve and certify practical alternatives to burning—"mechanical residue management." WAC 173-430-045(2). Mechanical residue management means removing the field residue. Techniques include (but are not limited to) tilling, swathing, chopping, baling, flailing, mowing, raking, and other substantially similar nonthermal, mechanical techniques. *Id.* Significantly, the regulation distinguishes between the production phases of grass production and tear out of the crop at the end of its useful life. For example, WAC 173-430-045(2) provides: "Ecology further concludes that mechanical residue management is practical throughout all phases of seed production including: (a) When the field is planted (establishment); (b) When the field is producing seed (harvest years); (c) When the field is prepared for replanting (tear out)."

¶23 The rule then defines "reasonably available." Mechanical residue management is reasonably available wherever "baling can be used" to gather the residue and remove it from the field. WAC 173-430-045(3). The farmer may choose the mechanical residue management practice that works best for him or her. *Id.* But burning is allowed when the farmer establishes that mechanical residue management is not reasonably available. WAC 173-430--045(4)(a). And unavailability of baling due to steep slope is

specifically provided for as a circumstance where burning is allowed. WAC 173-430-045(4)(a)(i).

■ ¶24 Rasmussen argues that burning is allowed in this "steep-slope" circumstance. Ecology contends, however, that a mechanical residue management technique remains—i.e., tear out. The plain language of the rule suggests to us that tear out is not an appropriate "residue management technique."

■ ¶25 Ecology regulations nevertheless preclude a waiver for any field under any circumstances after the field's fourth grass harvest season—even where baling is not an option because of slope. WAC 173-430-045(4)(a)(iii). Also, the field must not have been burned for three years in a row in the preceding five years. WAC 173-430--045(4)(a)(iv). It was under this subsection that Rasmussen's waiver application was denied.

¶26 The requirement in WAC 173-430-045(4)(a)(iii) that the farmer must prove that the field production is after its first and before its fourth harvest season cannot be found in the statutory scheme authorizing these regulations or even in the broader context of Ecology's rules.

¶27 Nor does the excerpt provided from Ecology's rule-making record support such a notion. Evidence in that record includes testimony that:

- Rotation is not an intrinsic element of mechanical residue management techniques such as baling. Clerk's Papers (CP) at 354.

- Deciding the optimal length of the rotation cycle is best left up to the individual farmer. "An important element in mechanical residue management is that these decisions remain with the farmer." CP at 362.

- "Establishing and taking out fields are common, traditional practices. The rule amendments certifying mechanical residue management and establishing where reasonably available [sic] do not change these current practices." CP at 362.

• In the dryland region of eastern Washington, which includes Whitman County [and the Rasmussen field], a five- to ten-year rotation is the norm. CP at 349.[1]

¶28 As applied to eastern Washington's dryland farmers, imposition of a five-year rotation requirement is not justified. The rule is, therefore, arbitrary and capricious. Plowing a grass crop under may be an alternative to burning. But it is not a practical agricultural technique for residue removal.

## HOLDING

¶29 Ecology did not fulfill the statutory prerequisite to its authority to withhold burn permits for steep slope fields. Therefore, WAC 173-430-045(4)(a)(iii) exceeds its enabling legislation. And it is also arbitrary and capricious.

¶30 We reverse the judgment of the superior court and dismiss the penalties.

¶31 Rasmussen is entitled to its attorney fees and costs under RCW 4.84.350, which provides for fees to the prevailing party on review of an agency action unless an award would be unjust under the circumstances.

KATO, C.J., and BROWN, J., concur.

Reconsideration denied July 8, 2005.

---

[1] Also Spokane, Garfield, Columbia, and Asotin Counties.